## SCRIPPS-HOWARD RADIO, INC. *v.* FEDERAL COMMUNICATIONS COMMISSION.

No 508.    Argued March 3, 1942.—Decided April 6, 1942.

*Mr. Paul M. Segal,* with whom *Mr. Harry P. Warner* was on the brief, for Scripps-Howard Radio, Inc.

*Mr. Thomas E. Harris,* with whom *Solicitor General Fahy* and *Messrs. H. G. Ingraham, Telford Taylor, Harry M. Plotkin,* and *Max Goldman* were on the brief, for the Federal Communications Commission.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This case is here on certificate from the Court of Appeals for the District of Columbia.    Judicial Code § 239, 28 U. S. C. § 346.    The question certified relates to the power of the Court of Appeals to stay the enforcement of an order of the Federal Communications Commission pending determination of an appeal taken under § 402 (b) of the Communications Act of 1934, 48 Stat. 1064, 1093.

The circumstances which induced the Court to certify the question are these: On October 10, 1939, the Commission granted without hearing the application of WCOL, Inc., licensee of Station WCOL, Columbus, Ohio, for a construction permit to change its frequency from 1210 to 1200 kilocycles and to increase its power from 100 to 250 watts. The appellant, Scripps-Howard Radio, Inc., which is the licensee of Station WCPO, Cincinnati, Ohio, operating on a frequency of 1200 kilocycles with power of 250 watts, filed a petition for "hearing or rehearing" requesting the Commission to vacate its previous order and set the WCOL application for hearing. The Commission denied this petition on March 29, 1940, and an appeal followed. In its statement of "reasons for appeal," the appellant claimed that the Commission could not lawfully grant the WCOL application without hearing; that in granting the application the Commission departed from its rules and standards of good engineering practice; that the appellant was entitled to a hearing in order to show that the Commission's action did not serve the public interest since it would result in materially reducing the coverage of Station WCPO and thereby deprive a substantial number of listeners of "the only local regional non-network service" available to them; and that in granting the WCOL application without hearing, the Commission violated the Due Process Clause of the Fifth Amendment.

The appellant asked the Court of Appeals to stay the Commission's order pending the disposition of its appeal. Even though the Court "had consistently over a long period of years, and without objection on the part of the Commission, issued stay orders" in cases where such orders were found to be necessary, the Commission opposed the issuance of a stay order in this case on the ground that the Court was without power to grant a stay. The application was heard before the Court sitting with

three judges, which, with one judge dissenting, upheld the Commission's contention. A motion for rehearing before all six members of the Court was granted. The judges being equally divided on the question of the Court's power to grant a stay, the following question was certified to us:

"Where, pursuant to the provisions of Section 402 (b) of the Communications Act of 1934, an appeal has been taken, to the United States Court of Appeals, from an order of the Federal Communications Commission, does the court, in order to preserve the status quo pending appeal, have power to stay the execution of the Commission's order from which the appeal was taken, pending the determination of the appeal?"

The Commission suggests that the certificate should be dismissed because of the generality of the question. *Lowden* v. *Northwestern Nat. Bank*, 298 U. S. 160. Read in the light of the preliminary statement certifying the facts which presented the question, *Hill* v. *Wampler*, 298 U. S. 460, 464, the question is limited to the type of order made by the Commission in this case. It is therefore sufficiently specific.

The Communications Act of 1934 is a hybrid. By that Act Congress established a comprehensive system for the regulation of communication by wire and radio. To secure effective execution of its policy of making available "a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges," Congress created a new agency, the Federal Communications Commission, to which it entrusted authority previously exercised by several other agencies. Under the Radio Act of 1927, 44 Stat. 1162, the Federal Radio Commission had broad powers over the licensing and regulation of radio facilities. The Mann-Elkins Act of 1910, 36 Stat. 539, gave the Interstate Commerce Commission general regulatory authority over telephone and telegraph carriers. In addition, the Post-

master General was empowered, under the Post Roads Act of 1866, 14 Stat. 221, to fix rates on government telegrams.[1] The Communications Act of 1934 was designed to centralize this scattered regulatory authority in one agency. See Message from the President to Congress, February 26, 1934, Sen. Doc. No. 144, 73d Cong., 2d Sess.; Sen. Rep. No. 781, 73d Cong., 2d Sess., p. 1; H. Rep. No. 1850, 73d Cong., 2d Sess., pp. 3–4.

The provisions for judicial review in the Act of 1934 reflect its mixed origins. Section 402 (a) makes the provisions of the Urgent Deficiencies Act of October 22, 1913, 38 Stat. 208, 219, pertaining to judicial review of orders of the Interstate Commerce Commission, applicable to "suits to enforce, enjoin, set aside, annul, or suspend any order of the Commission under this Act (except any order of the Commission granting or refusing an application for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license)." 48 Stat. 1064, 1093. The Urgent Deficiencies Act, which is thus incorporated in § 402 (a) of the Communications Act of 1934, provides for review in a specially constituted district court, with direct appeal to this Court. That Act authorizes the District Court, in cases "where irreparable damage would otherwise ensue to the petitioner," to allow a temporary stay of the order under review, subject to specified safeguards. 38 Stat. 208, 220.

---

[1] A summary of the authority vested in the Federal Radio Commission, the Interstate Commerce Commission, and the Postmaster General, and of the extent to which such authority was actually exercised, is contained in Appendix A, Historical Background of the Communications Act of 1934, of the Monograph of the Attorney General's Committee on Administrative Procedure dealing with the Federal Communications Commission, Sen. Doc. No. 186, 76th Cong., 3d Sess., pt. 3; see also Herring and Gross, Telecommunications, pp. 210–45.

Section 402 (b) of the Communications Act of 1934 provides for review of the orders excepted from § 402 (a). It gives an appeal "from decisions of the Commission to the Court of Appeals of the District of Columbia in any of the following cases: (1) By any applicant for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license, whose application is refused by the Commission. (2) By any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing such application." 48 Stat. 1064, 1093. This section follows § 16 of the Radio Act of 1927, 44 Stat. 1162, as amended in 1930, 46 Stat. 844, the relevant portions of which are set forth in the margin.[2] See Sen. Rep. No. 781, 73d Cong., 2d Sess., p. 9; H. Report No. 1918, 73d Cong., 2d Sess., pp. 49–50; remarks of Senator Dill, in charge of the measure in the Senate, 78 Cong. Rec. 8825, and of Representative Rayburn, who occupied the same role in the House, 78 Cong. Rec. 10314.

Thus, in both the Radio Act of 1927 and the Communications Act of 1934, orders granting or denying applications for construction permits or station licenses and for renewal or modification of licenses were made reviewable by the Court of Appeals for the District of Columbia.[3]

---

[2] "Any applicant for a construction permit, for a station license, or for the renewal or modification of an existing station license whose application is refused by the licensing authority shall have the right to appeal from said decision to the Court of Appeals of the District of Columbia. . . ." 44 Stat. 1162, 1169.

[3] Where the Commission revokes a station license or modifies a license on its own motion, judicial review is available only under § 402 (a) of the Communications Act. The reason for this differentiation appears in the following satement of Senator Dill, who steered the bill in the Senate:

"I desire to call attention to what I think is an important fact to consider in this appeal provision. Those owners of radio broad-

And with respect to such appeals, both § 16 of the
Radio Act and § 402 (b) of the Communications Act
were silent with respect to the power of the Court of
Appeals to stay orders pending appeal. It is upon this
silence in the Communications Act that the Commission
bases its contention, made for the first time when this
litigation arose in 1940, that the Court is without such
power.

No court can make time stand still. The circumstances
surrounding a controversy may change irrevocably during
the pendency of an appeal, despite anything a court can do.
But within these limits it is reasonable that an appellate
court should be able to prevent irreparable injury to the
parties or to the public resulting from the premature en-
forcement of a determination which may later be found
to have been wrong. It has always been held, therefore,
that as part of its traditional equipment for the adminis-

---

casting stations living long distances from the District of Columbia
should not be required to come to Washington to prosecute an appeal
from a decision for which they were not responsible. When I say
'were not responsible' I mean a decision which was granted against
them or affecting them when they did not bring the case into
court. . . . So we provide that where the decisions of the com-
mission are made in cases wherein the stations took no part in begin-
ning the suits, appeal may be taken in the three-judge district courts
in the jurisdictions where the stations are located. But in the case
where the applicant for the license or the permit, or whatever it
may be, comes to the commission and asks for a change in his license
or asks for a new license, or asks for something to be done by the
commission, then if the commission makes a decision from which he
desires to appeal he must make his appeal in the courts of the
District of Columbia." 78 Cong. Rec. 8825–26. Cf. Sen. Rep. No.
781, 73d Cong., 2d Sess., pp. 9–10.

Section 16 of the Radio Act of 1927 provided for appeals from
revocation orders to either the Court of Appeals for the District of
Columbia or the District Court of the district in which the station
was located. 44 Stat. 1162, 1169.

tration of justice,[4] a federal court can stay the enforcement of a judgment pending the outcome of an appeal. *In re Claasen,* 140 U. S. 200; *In re McKenzie,* 180 U. S. 536.

Generally speaking, judicial review of administrative orders is limited to determining whether errors of law have been committed. *Rochester Telephone Corp.* v. *United States,* 307 U. S. 125, 139–40. Because of historical differences in the relationship between administrative bodies and reviewing courts and that between lower and upper courts, a court of review exhausts its power when it lays bare a misconception of law and compels correction. *Federal Communications Commission* v. *Pottsville Broadcasting Co.,* 309 U. S. 134, 144–45. If the administrative agency has committed errors of law for the correction of which the legislature has provided appropriate resort to the courts, such judicial review would be an idle ceremony if the situation were irreparably changed before the correction could be made. The existence of power in a reviewing court to stay the enforcement of an administrative order does not mean, of course, that its exercise should be without regard to the division of function which the legislature has made between the administrative body and the court of review. "A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. *In re Haberman Manufacturing Co.,* 147 U. S. 525. It is an exercise of judicial discretion. The propriety of its issue is dependent upon the circumstances of

---

[4] Section 262 of the Judicial Code, 28 U. S. C. § 377, empowers the federal courts "to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." This provision appeared in the very first Judiciary Act, 1 Stat. 73, 81–82. Compare District of Columbia Code (1940 ed.) Title 11–208, authorizing the Court of Appeals for the District of Columbia "to issue all necessary and proper remedial prerogative writs in aid of its appellate jurisdiction." 31 Stat. 1189, 1227.

the particular case." *Virginian Ry. Co.* v. *United States,* 272 U. S. 658, 672–73; see *Merchants Warehouse Co.* v. *United States,* 283 U. S. 501, 513–14.

These controlling considerations compel the assumption that Congress would not, without clearly expressing such a purpose, deprive the Court of Appeals of its customary power to stay orders under review. It is urged that such a manifestation appears in the provisions for judicial review contained in the Communications Act of 1934. Specifically, the Commission contends that since § 402 (a) incorporates the provisions of the Urgent Deficiencies Act of 1913 which explicitly authorize and regulate the issuance of stay orders, the omission of any reference in § 402 (b) to a power to stay orders under review reflects a deliberate Congressional choice to deprive the Court of Appeals of this power.

The search for significance in the silence of Congress is too often the pursuit of a mirage. We must be wary against interpolating our notions of policy in the interstices of legislative provisions. Here Congress said nothing about the power of the Court of Appeals to issue stay orders under § 402 (b). But denial of such power is not to be inferred merely because Congress failed specifically to repeat the general grant of auxiliary powers to the federal courts. The Commission argues that the silence of Congress, in view of the legislative history of the Act and the nature of the orders reviewable under the Act, qualifies this general authority and is as commanding as if Congress had expressly withheld from the Court of Appeals the power to stay orders appealed under § 402 (b).

The legislative history can furnish no support for this contention. Neither the committee reports nor the hearings nor the debates contain any reference to the power to stay Commission orders on appeal. Significance is found in H. R. 7716, 72d Congress, a bill which was passed by both houses in 1933 but which failed of enactment be-

cause of a pocket veto. That bill proposed to amend § 16 of the Radio Act of 1927 so as to vest concurrent jurisdiction (with the Court of Appeals for the District of Columbia) of revocation cases in the circuit courts of appeals, rather than in the district courts. The bill also provided that the reviewing court, whether a circuit court of appeals or the Court of Appeals for the District of Columbia, could enter a stay order "upon the giving of a bond by the party applying for the stay in such amount and with such terms and conditions" as the court deemed proper.

It is suggested that if Congress had intended in the Act of 1934 to authorize the Court of Appeals to issue stay orders in appeals under § 402 (b), it would not have remained silent when only the year before it had attempted to enact into law a specific provision conferring that power. But H. R. 7716 and the Communications Act of 1934 were not parallel legislative proposals. The former was not a comprehensive legislative scheme for the unification of federal regulatory authority over communications. It proposed merely to amend the Radio Act of 1927 in several minor particulars. See H. Rep. No. 221, 72d Cong., 1st Sess., p. 7; Sen. Rep. No. 564, 72d Cong., 1st Sess., p. 7; Sen. Rep. No. 1004, 72d Cong., 2d Sess., p. 9. The enactment of the Communications Act of 1934, however, came after a message to Congress from the President on February 26, 1934, recommending the creation of a single authority over communication by wire and radio. Sen. Doc. No. 144, 73d Cong., 2d Sess. Earlier in 1934 an interdepartmental committee had made a study of the entire communications situation. Extensive public hearings on the question of regulating the whole field of communications were held by both the Senate and House Committees on Interstate Commerce. It is obvious, therefore, that what Congress undertook to do by the Communications Act of 1934 was entirely different from what it tried to do the previous year in H. R. 7716.

We are told that in drafting § 402 Congress had before it and relied extensively upon H. R. 7716, and reference is made to the citations to that bill in the statement of the House managers. H. Rep. No. 1918, 73d Cong., 2d Sess., pp. 47–49. But whatever reliance was placed upon H. R. 7716 by the framers of the 1934 legislation was without relation to its provisions for judicial review. For in that same statement (p. 47) it is said that the "provisions of the Radio Act of 1927 relating to judicial review have been included" in the bill. And, as has previously been noted, even though the Radio Act of 1927 contained no provisions dealing with the authority of the Court of Appeals for the District of Columbia to stay orders of the Commission on appeal, the Court had been issuing stays as a matter of course wherever they were found to be appropriate, without objection by the Commission. *Boston Broadcasting Co.* v. *Federal Radio Commission,* 62 App. D. C. 299, 67 F. 2d 505, decided June 19, 1933.

It is indisputable that, at least since 1930, the Court of Appeals has been staying orders both of the Federal Radio Commission, under § 16 of the Radio Act of 1927, and of the Federal Communications Commission, under § 402 (b) of the Communications Act of 1934, whenever stays were regarded as necessary. To be sure, in only one case, the *Boston Broadcasting* decision, *supra,* did the Court of Appeals even refer to the granting of a stay order. The explanation is not hard to find. The power to stay was so firmly imbedded in our judicial system, so consonant with the historic procedures of federal appellate courts, that there was no necessity for the Court of Appeals to justify its settled practice.[5]

---

[5] As late as February 23, 1939, the Commission stated its position as follows: "The Commission has not opposed in the past, and does not propose in the future to oppose the granting of a stay or such interlocutory restraining order by this court as may be necessary to protect the appellate jurisdiction of the court or preserve the *status quo* pend-

14

The considerations of policy which are invoked are as fragile as the legislative materials are inapposite. It is said that the nature of the orders reviewable under § 402 (b) makes the grant of a stay order manifestly inappropriate since a stay would in effect involve the judicial exercise of an administrative function. An example is adduced of an appeal from an order denying an application for a construction permit or a station license, or for modification or renewal of a license. Of course, no court can grant an applicant an authorization which the Commission has refused. No order that the Court of Appeals could make would enable an applicant to go on the air when the Commission has denied him a license to do so. A stay of an order denying an application would in the nature of things stay nothing. It could not operate as an affirmative authorization of that which the Commission has refused to authorize. But this is no reason for denying the Court the power to issue a stay in a situation where the function of the stay is to avoid irreparable injury to the public interest sought to be vindicated by the appeal.

The Communications Act of 1934 did not create new private rights. The purpose of the Act was to protect the public interest in communications. By § 402 (b) (2) Congress gave the right of appeal to persons "aggrieved or whose interests are adversely affected" by Commission action. 48 Stat. 1064, 1093. But these private litigants have standing only as representatives of the public interest. *Federal Communications Commission* v. *Sanders Radio Station,* 309 U. S. 470, 477. Compare *National Licorice Co.* v. *Labor Board,* 309 U. S. 350, 362–63. That

ing determination of an appeal from an order of the Commission, in any case where such a stay or restraining order appears reasonably to be necessary or advisable." Opposition to Petition for Stay Order filed by the Commission in *Crosley Corp.* v. *Federal Communications Commission,* No. 7351, Court of Appeals for the District of Columbia, Feb. 23, 1939, pp. 1-2.

a court is called upon to enforce public rights and not the interests of private property does not diminish its power to protect such rights. "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Virginian Ry. Co.* v. *Federation,* 300 U. S. 515, 552. An historic procedure for preserving rights during the pendency of an appeal is no less appropriate—unless Congress has chosen to withdraw it—because the rights to be vindicated are those of the public and not of the private litigants. Unless Congress explicitly discloses such an intention we should not lightly attribute to it a desire to withhold from a reviewing court the power to save the public interest from injury or destruction while an appeal is being heard. To do so would stultify the purpose of Congress to utilize the courts as a means for vindicating the public interest. Courts and administrative agencies are not to be regarded as competitors in the task of safeguarding the public interest. *United States* v. *Morgan,* 307 U. S. 183, 190–91; *Federal Communications Commission* v. *Pottsville Broadcasting Co.,* 309 U. S. 134. Courts no less than administrative bodies are agencies of government. Both are instruments for realizing public purposes.

It is urged that the orders reviewable under § 402 (a), as to which the power to grant stays is undeniable, are intrinsically different from those reviewable under § 402 (b). But while the two sections route appeals to different courts, the differentiation was in large measure the product of Congressional solicitude for the convenience of litigants. It had no relation to the scope of the judicial function which the courts were called upon to perform. For example, if the Commission on its own motion modifies a station license, review is had under § 402 (a) in the appropriate district court. However, if it grants an application for modification of a license, an appeal lies under § 402

16

(b) to the Court of Appeals for the District of Columbia. Both cases give rise to the same kind of issues on appeal. Both orders are equally susceptible of being stayed on appeal. As the legislative history of the Act plainly shows, Congress provided the two roads to judicial review only to save a licensee the inconvenience of litigating an appeal in Washington in situations where the Commission's order arose out of a proceeding not instituted by the licensee. [6]

Judged by its own terms, its history, and the practice under it, the Communications Act of 1934 affords no warrant for depriving the Court of Appeals of the conventional power of an appellate court to stay the enforcement of an order pending the determination of an appeal challenging its validity. Indirect light is sometimes cast upon legislation by provisions dealing with the same problem in related enactments. No such light is shed here. The numerous laws in which Congress has established administrative agencies for the exercise of its regulatory powers do not disclose any general legislative policy regarding the power to stay administrative orders pending review. Some statutes are wholly silent;[7] some turn a court review into an automatic stay;[8] some provide that the commencement of a suit shall not operate as a stay unless the court specifically so provides;[9] some authorize the reviewing

---

[6] See note 3, *supra*.

[7] E. g., Commodity Exchange Act of 1922, 42 Stat. 998, 1001, 7 U. S. C. § 9; Radio Act of 1927, 44 Stat. 1162; Railroad Retirement Act of 1937, 50 Stat. 307, 315, 45 U. S. C. § 228k.

[8] E. g., Federal Alcohol Administration Act of 1935, 49 Stat. 977, 980, 27 U. S. C. § 204h; Investment Company Act of 1940, 54 Stat. 789, 844, 15 U. S. C. § 80a–42 (b).

[9] E. g., Agricultural Adjustment Act of 1938, 52 Stat. 31, 7 U. S. C. § 1367; Securities Act of 1933, 48 Stat. 74, 80, 15 U. S. C. § 77i; Trust Indenture Act of 1939, 53 Stat. 1175, 15 U. S. C. § 77vvv; Public Utility Act of 1935, 49 Stat. 803, 834, 15 U. S. C. § 79x; Investment

court to grant a stay where necessary.[10]   Significantly, the recent Emergency Price Control Act of 1942, 56 Stat. 23, explicitly denies the power of the reviewing court to enjoin enforcement of the administrative orders.

The various enactments in which the staying power is made explicit, as well as the statutes that are silent about it, afford debating points but no reliable aids in construing the Act before us.   One thing is clear.   Where Congress wished to deprive the courts of this historic power, it knew how to use apt words—only once has it done so and in a statute born of the exigencies of war.

We conclude that Congress by § 402 (b) of the Communications Act of 1934 has not deprived the Court of Appeals of the power to stay—a power as old as the judicial system of the nation.   We do not of course go beyond the question put to us.   We merely recognize the existence of the power to grant a stay.   We are not concerned here with the criteria which should govern the Court in exercising that power.   Nor do we in any way imply that a stay would or would not be warranted upon the showing made by the appellant in this case.

The question certified to us is answered in the affirmative.

*So ordered.*

Company Act of 1940, 54 Stat. 789, 844, 15 U. S. C. § 80a-42 (b); Investment Advisers Act of 1940, 54 Stat. 847, 856, 15 U. S. C. § 80b-13; Fair Labor Standards Act of 1938, 52 Stat. 1060, 1065, 29 U. S. C. § 210 (b); Bituminous Coal Act of 1937, 50 Stat. 85, 15 U. S. C. § 836 (b); Natural Gas Act of 1938, 52 Stat. 821, 832, 15 U. S. C. § 717r (c).

[10] E. g., Civil Aeronautics Act of 1938, 52 Stat. 973, 1024, 49 U. S. C. §· 228k; Federal Trade Commission Act of 1914, 38 Stat. 719, as amended, 52 Stat. 111, 113, 15 U. S. C. § 45 (c) (authorizing the court to issue such writs as "are necessary in its judgment to prevent injury to the public or to competitors pendente lite").

[Over]

18

MR. JUSTICE BLACK took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, dissenting:

Congress has provided through § 402 (a) of the Communications Act of 1934 that in appeals from certain classes of orders of the Federal Communications Commission the appellate court may issue a stay. The order here involved is of a class which is expressly excepted from § 402 (a). Sec. 402 (b), which provides for an appeal from this class of order, contains no provision whatsoever for a judicial stay. Where Congress in one section of an Act has provided for a stay of certain orders but not of others, it has not remained silent on the subject. It has drawn a line. And that line should not be obliterated by us, in absence of plain and compelling indications that the purpose of Congress was different from what the face of the statute reveals. There are no such reasons here.

The legislative history gives no comfort to the view of the majority. In drafting § 402, Congress had before it H. R. 7716, 72d Congress. That bill, designed to amend the Radio Act of 1927, had been passed by both houses in 1933 but had failed of enactment because of a pocket veto. Under § 16 (f) of that bill, orders of the type here in question could be stayed by the appellate court. Congress relied extensively on that earlier bill in drafting § 402. H. Rep. No. 1918, 73d Cong., 2nd Sess., pp. 47–49. If Congress had intended the appellate court to have the power to stay this type of order, it hardly seems likely, as the Commission points out, that Congress would have failed to include it, when, only the year before, it had attempted to write into the statute a specific provision conferring that power. But if we disregard that circumstance and turn to other parts of the legislative history, there are no indications that the line which Congress drew

between § 402 (a) and § 402 (b) was inadvertent or accidental.

Nor are we justified in rewriting the statute to iron out possible logical inconsistencies in the classification of orders which Congress has made in § 402 (a) and § 402 (b). If we were a legislative committee, perhaps we would not retain in § 402 (a) orders which are made by the Commission on its own motion and which modify a station license, since such orders if made pursuant to an application are covered by § 402 (b). But to seize on that lack of symmetry here is to miss the forest for the trees. The nature of the run of the orders excepted from the stay provisions of § 402 (a) demands respect for the words of the Act. The instant case is a good illustration. *Federal Communications Commission* v. *Sanders Bros.*, 309 U. S. 470, holds that a competitor such as appellant has no private property interest which may be protected on appeal. "The policy of the Act is clear that no person is to have anything in the nature of a property right as a result of the granting of a license." *Id.*, p. 475. Any injury to an existing station as is alleged here "is not a separate and independent element to be taken into consideration by the Commission in determining whether it shall grant or withhold a license." *Id.*, p. 476. Thus it is manifest that the failure of Congress to extend the stay provisions of § 402 (a) to the run of orders of this type makes sense. The Urgent Deficiencies Act, which is incorporated into § 402 (a), allows a temporary stay "where irreparable damage would otherwise ensue to the petitioner." 38 Stat. 208, 220. But where appeals under § 402 (b) (2), as in the instant case, are not shown to involve private rights, analogies to situations where the power to issue a stay is implied because irreparable damage may be done an appellant whose individual interest has been unlawfully invaded are inapposite. For the same reason, statistics as to the presence of this power in statutes of other administrative agencies

are irrelevant, in absence of a showing that in the precise situations there involved no private rights were at stake.

And that leads to a related reason why it will not do to lean on "the historic procedures of federal appellate courts" so that an implied power to issue a stay in this type of case may be found. "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property." *In re Sawyer,* 124 U. S. 200, 210. All constitutional questions aside (*Muskrat v. United States,* 219 U. S. 346), we should require explicit, unequivocal authorization before we permitted an appellant who has no individual substantive right at stake in the litigation to obtain a stay to protect the public interest. Repeated attempts of private litigants to obtain a special stake in public rights have been consistently denied. See *Massachusetts* v. *Mellon,* 262 U. S. 447; *Sprunt & Son* v. *United States,* 281 U. S. 249; *Alabama Power Co.* v. *Ickes,* 302 U. S. 464; *Tennessee Electric Power Co.* v. *Tennessee Valley Authority,* 306 U. S. 118; *Atlanta* v. *Ickes,* 308 U. S. 517; *Singer & Sons* v. *Union Pacific R. Co.,* 311 U. S. 295. The attempt to obtain a stay is but another manifestation, albeit oblique, of that same endeavor. Hence, instead of starting from the premise that an "historic power" to issue a stay in this type of case will be readily implied, we should assume just the contrary. Not even long acquiescence or approval on the part of the Commission should lead us to make such a departure from those historic, accepted principles. For that reason alone, § 402 (b) should be read narrowly and restrictively.

But it is said that Congress entrusted the vindication of the public interest to private litigants. The *Sanders* case, properly construed, merely means that the Court of Appeals has *jurisdiction* of appeals by a "person aggrieved" or by one "whose interests are adversely affected" by the Commission's decision. § 402 (b). But

that does not mean that an appellant has a cause of action merely because he has a competing station. Unless he can show that his individual interest has been unlawfully invaded, there is merely *damnum absque injuria* and no cause of action on the merits. *Alabama Power Co.* v. *Ickes, supra; Greenwood County* v. *Duke Power Co.,* 81 F. 2d 986, 999. And see *Duke Power Co.* v. *Greenwood County,* 302 U. S. 485. Congress could have said that the holder of a radio license has an individual substantive right to be free of competition resulting from the issuance of another license and causing injury. In that event, unlike the situation in *Muskrat* v. *United States, supra,* there would be a cause of action for invasion of a substantive right. But as we said in the *Sanders* case, Congress did not create such a substantive right. And no facts are shown here which would bring this appeal outside the rule of that case. On that assumption, I fail to see how an appeal statute constitutionally could authorize a person who shows no case or controversy to call on the courts to review an order of the Commission. *A fortiori* he would have no standing to obtain a stay.

Furthermore, the power to issue a stay in this type of case cannot be found in the "all writs" statutes. Judicial Code, § 262; District of Columbia Code (1940 ed.) Title 11–208. As we stated in *Federal Communications Commission* v. *Pottsville Broadcasting Co.,* 309 U. S. 134, the relationship between the Court of Appeals and the Commission is not that of federal courts *inter se.* ". . . to assimilate the relation of these administrative bodies and the courts to the relationship between lower and upper courts is to disregard the origin and purposes of the movement for administrative regulation and at the same time to disregard the traditional scope, however far-reaching, of the judicial process. Unless these vital differentiations between the functions of judicial and administrative tri-

bunals are observed, courts will stray outside their province and read the laws of Congress through the distorting lenses of inapplicable legal doctrine." p. 144. The Commission, not the courts, is the ultimate guardian of the public interest under this Act. The appellate court is limited to a correction of "errors of law." *Id.*, p. 145. The judgment of the Commission, not the court, determines whether the public interest will be served by an application. *Id.*, pp. 144–145. Hence, the power of the courts in this situation to issue writs under the "all writs" statutes should be limited to the protection of its jurisdiction. If, as here, construction of a new station is completed pending appeal by another licensee, the court's jurisdiction is not impaired, though we assume that it has jurisdiction of the appeal and that appellant has a cause of action on the merits. If the Commission has committed an error of law, it must bow to the decree of the court and revise its order. But to allow the court to go beyond that and find an implied power to issue a stay in this type of case is to distort the statutory scheme. 12 Air L. Rev. 224. Jealous regard for the administrative role and function in this field will leave to Congress any enlargement, within constitutional limits, of the judicial power.

MR. JUSTICE MURPHY joins in this dissent.