NATIONAL CAPITAL INSURANCE COMPANY OF the DISTRICT OF COLUMBIA et al., Plaintiffs,

v.

Albert F. JORDAN, Superintendent of Insurance of the District of Columbia, et al., Defendants.

Civ. A. No. 3142-56.

United States District Court
District of Columbia.

Jan. 30, 1957.

Wm. D. Payne, Washington, D. C., Abraham Kaplan, Charles P. Butler, and George Gross, New York City, for plaintiff National Capital Ins. Co.

Chester H. Gray, Corp. Counsel, Lloyd Harrison and John A. Earnest, Asst. Corp. Counsel, Washington, D. C., for defendant Superintendent of Insurance.

Henry H. Glassie and Thomas M. Cooley, II, Washington, D. C., W. Perry Epes, Philadelphia, Pa., for defendants Insurance Co. of North America and another.

PINE, District Judge.

This is an action brought by the National Capital Insurance Company of the District of Columbia on its own behalf and on behalf of others similarly situated. The American Fire Insurance Company of the District, which also sued as a plaintiff, is no longer in the case, having dismissed its action. The plaintiff is a corporation organized under the laws of the District, and conducts a fire insurance business herein. The defendants are the Superintendent of Insurance of the District, the Insurance Company of North America, the Philadelphia Fire and Marine Insurance Company, and the Insurance Rating Bureau of the District.

Each of defendant companies conducts a fire insurance business in the District.

The action seeks to contest the validity of the approval by the Superintendent of an application for deviation in rates, filed by defendant companies. This approval permits these companies to deviate 10% downward from the fire and extended coverage rates and the minimums thereof, filed by the Rating Bureau on behalf of all its members and approved by the Superintendent. Plaintiff claims that no notice of the filing of the application was given by the Superintendent to it, nor was it given an opportunity to be heard. The effect of this deviation, according to plaintiff, is a price cut of 10% below the prices which the plaintiff and other licensees may lawfully charge for the same insurance, resulting in a competitive advantage which will be most persuasive in securing insurance business for defendant companies, which otherwise would be written by plaintiff and other licensees. This act of the Superintendent in preferring two competitors over others, without notice or opportunity to be heard, is alleged by plaintiff to be in violation of the due process clause of the Fifth Amendment to the Constitution. Plaintiff also charges that the Superintendent, in approving the application of defendant companies, acted upon insufficient evidence, and that his action is arbitrary, discriminatory, and capricious. It also charges that the approval can only be valid if proper standards have been established, but that in this case there were no standards and none was considered. Finally, it claims that the act of the Superintendent is confiscatory, and that, if permitted to stand, defendant companies would have an undue and unlawful competitive advantage over plaintiff and other licensees, in that plaintiff and other licensees would either be unable to meet such competition, thereby resulting in a virtual monopoly of the business by defendant companies, or would be compelled to seek similar deviations which, if granted, would compel them to write insurance at inadequate, confiscatory, and discriminatory rates.

All the defendants, other than the Rating Bureau, have moved to dismiss the complaint or, in the alternative, for summary judgment, contending that plaintiff has no standing to sue, has alleged no direct injury, and has raised no valid constitutional issues.

The action of the Superintendent in this case was taken under the Act of Congress to provide for "regulation of certain insurance rates in the District of Columbia," approved June 1, 1944, and contained in Chapter 14 of Title 35, D.C. Code 1951, Sections 35–1401 to 35–1409, inclusive, hereinafter briefly discussed.

Section 2 of this Act, Sec. 35–1402, D. C.Code, provides that its provisions shall apply to insurance in the District of Columbia against loss or damage to property as a consequence of fire, etc.

Section 3 of the Act, Sec. 35–1403, D.C. Code, provides that the Superintendent is empowered to investigate the necessity for an adjustment of rates on any and all risks or classes of risks within its scope, and to order an adjustment of such rates whenever he determines, after investigation of the experience showing premiums and losses for a period of not less than five years next preceding such investigation, that the rates are excessive, inadequate, or unreasonable. In determining the necessity for an adjustment of rates, the Superintendent is required to give consideration to all factors reasonably attributable to the risks, etc., both within and without the District, and to a reasonable profit; and he is further empowered to order removed any unfair discrimination existing between individual risks or classes of risks.

This section further provides that any person *aggrieved* by any order, ruling, proceeding, or action of the Superintendent may appeal to the Commissioners of the District, *or* may contest the validity of such order, ruling, proceeding, or action, in any court of competent jurisdiction, by appeal or through any other appropriate proceedings, as provided under Sections 35–1348 and 35–1349 of the Code. The last-mentioned section provides that any person *affected* by an or-

der, ruling, proceeding, or action of the Superintendent may contest the validity of the same in any court of competent jurisdiction, by appeal or through any other appropriate proceedings.

The Court of Appeals for this circuit has held, in Jordan v. American Eagle Fire Insurance Co., 83 U.S.App.D.C. 192, 169 F.2d 281, that the authorization to the Superintendent to adjust rates whenever he determines, after investigation, that they are excessive, inadequate, or unreasonable, does not require that a quasi-judicial hearing be conducted by him, but that the section permitting any person aggrieved by the Superintendent's order to contest the validity thereof in any court of competent jurisdiction, gives a complete right to a full hearing de novo, upon which the court will determine the validity of the order in all respects in which it is contested.

Section 4 of this Act, Sec. 35–1404, D.C.Code, provides that the insurance companies authorized to effect insurance in the District shall organize a rating bureau for the purpose of administering rates for such insurance, and that all such companies authorized to transact such business shall be members of such bureau.

Section 5 of the Act, Sec. 35–1405, D.C.Code, provides that no company shall issue or deliver any policy of insurance which does not conform to the requirements approved by the Superintendent, provided, however, that a company may deviate from such requirements if the company has filed with the rating bureau and with the Superintendent the deviation to be applied, and provided such deviation is approved by the Superintendent. It further provides that the deviation shall remain in force for a period of one year unless such approval is withdrawn by the Superintendent for cause, after notice to the insurer, or withdrawn by the insurer with the approval of the Superintendent.

Section 6 of the Act, Sec. 35–1406, D.C.Code, provides that the Bureau shall keep a record of all rates, etc.; and Section 7 of the Act, Sec. 35–1407, D.C.

Code, provides that the Superintendent is authorized to examine all records of the Rating Bureau, companies, and agents, and to require every company to furnish statistical reports of premiums and losses.

Section 8 of the Act, Sec. 35–1408, D.C.Code, provides that no rate, premium, schedule, rating method, rule, bylaw, agreement, or regulation shall become effective or be charged, applied, or enforced in the District by the Rating Bureau or any company, agent, or broker governed by the provisions of this Act until it has been first filed with and approved by the Superintendent; and that no company, agent, or broker shall issue any form of policy, clause, warranty, rider, or endorsement until such form shall have been filed with and approved by the Superintendent.

The threshold question—indeed, the point principally relied on by defendants in their motion—is whether the plaintiff has standing to sue. Plaintiff contends that it has a statutory right to sue under Section 35–1403, supra, as a party "aggrieved." Defendants contend that this statutory right does not apply to the act of the Superintendent in approving an application for deviation under Section 35–1405, supra, and moreever, that plaintiff is not a party "aggrieved."

To be sure, as defendants point out, the statutory right to appeal to the courts is not contained in the section relating to approval of deviations, and is contained in the section relating to overall "adjustment" of rates. However, a "deviation" in rates necessarily is an adjustment of rates on an individual basis, and the provision for appeal would appear to be as applicable in the one case as in the other. In addition, the paragraph providing for an appeal gives the right to any person aggrieved by any "order, ruling, proceeding, or action of the superintendent." This all-inclusive language literally covers the "action" of the Superintendent in approving an application for deviation, and would have been surplusage and inappropriate

if· the intention were to confine appeals merely to an "order" adjusting rates, as contended by defendants. Moreover, it is significant to. note that when the bill, which later became the Act of Congress herein involved, was under consideration by a subcommittee of the Committee of the District of Columbia of· the Senate, objection was made to the section having to do with deviation by a proposal for a new section, and in connection with this objection and in opposing the proposal, the defendant Superintendent of Insurance stated, with reference to deviations, that "surely it must be borne in mind that [the bill] provides most fairly for appeal not only to the Superintendent's immediate superiors *but to the courts as well.*" (Italics supplied.)

Also, in support of the view that approval of deviations is within the scope of the appeal provision is the reference therein to a section of the earlier Act of October 9, 1940, which provides that "any person *affected* [italics supplied] by an order, ruling, proceeding, or action of the superintendent, * * * may contest the validity * * * in any court of competent jurisdiction," etc. Sec. 35–1349, supra. This reference to the earlier statute which uses the word "affected" is indicative of a purpose not to limit appeals to any narrow confines which might be attributable to the use of the word "aggrieved." Cf. United States v. Public Utilities Commission, 80 U.S.App.D.C. 227, 151 F.2d 609.

And finally, a construction of the appeal provision, as urged by defendants, would leave plaintiff and all others similarly situated without statutory right of redress against capricious, arbitrary, or unwarranted acts of the Superintendent, however flagrant, in connection with deviation applications, and for the reasons below stated also without redress by the injunctive process. I am unwilling to ascribe such intention to Congress when it undertook to "regulate" fire insurance rates in the District in the manner above set forth. Cf. Yankee Network v. F. C. C., 71 App.D.C. 11, 107 F.2d 212.

■ ·I therefore reach the conclusion that, under Section 35–1403, supra, appeals to the courts may be taken from the action of the Superintendent· in passing upon applications for deviation in rates, pursuant to Jordan v. American Eagle Fire Insurance Company, supra.

But defendants further contend that the plaintiff's injury results from competition, and that this gives it no legal standing to sue; and on this point they cite numerous cases, namely Perkins v. Lukens Steel Co., 310 U.S. 113, 117, 60 S.Ct. 869, 84 L.Ed. 1108; Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924; United Milk Producers of New Jersey v. Benson, 96 U.S.App.D.C. 227, 225 F.2d 527; Tennessee Electric Power Co. v. TVA, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543; and Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374. These cases, however, are not apposite, as the following brief discussion of them will disclose.

The Perkins case involved a complaint · by iron and steel manufacturers who sought to restrain the Secretary of Labor from carrying out administrative wage determinations. Their claim to a standing in court was the assertion that they had the right to bid and negotiate for Government contracts, free from compliance with the wage determination made by the Secretary. The Court held under those facts that the steel companies, to have standing in court, must show an injury or threat to a particular legal right of their own as distinguished from the public interest in the administration of the law.

In the McKay case, the Court held that the competition which private electric power companies would suffer as a consequence of federally supported power program was not of sufficient interest to enable the power companies to sue to enjoin the execution of the power contracts and program of the Government. There, as the Court pointed out, the defendant had not undertaken to regulate the companies in any way, nor had they been ordered to abandon any of their activities or subjected to any obligation

or duty, their sole interest and objective being to eliminate the competition which they feared.

In the Benson case, the Court held that the plaintiffs had no legal right invaded by lawful competition facilitated by governmental action in respect of a Federal milk marketing order. They did not "rely upon any provision of the Act itself as affording them standing to attack" the order, and the Court held that "injury from lawful competition is damnum absque injuria and affords no standing to the party damaged to seek judicial relief therefrom, *absent statutory aid to standing.*" (Italics supplied.) [96 U.S.App.D.C. 227, 225 F. 2d 529.]

The other cases cited are similar in character.

Here, however, as distinguished from the cases relied on by defendants, plaintiff and all others engaged in the industry are regulated, not to the extent of a public utility, but to the extent of being required by statute to become a member of the Rating Bureau organized for the purpose of administering rates for insurance. Here plaintiff and all others engaged in the industry are forbidden to charge, apply, or enforce any rate, premium, schedule, rating method, rule, bylaw, agreement, or regulation until it shall have been first filed with and approved by the Superintendent. Here, as distinguished from the cases relied on by defendants, plaintiff has a statutory right to sue if "aggrieved" or "affected"; and this brings me to the authorities which, in my opinion, are dispositive of this issue.

■ This statutory right to sue enlarges the standing-to-sue doctrine, which forbids suits by parties who are merely taxpayers, interested in obtaining Government contracts, desirous of preventing competition caused by Government activity, or the like. This enlarged right is set forth in the cases which I shall now discuss.

In Federal Communications Commission v. Sanders Brothers Radio Station,

309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037, the Federal Communications Commission contended economic injury to a competitor was not ground for refusing a broadcasting license to another, and that therefore Sanders Brothers, which complained, was not a person aggrieved or a person whose interest was adversely affected by the Commission's actions. But the Court held that it had the requisite standing under the statute giving a right of appeal similar to the one here involved.

In Scripps-Howard Radio v. Federal Communications Commission, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229, this doctrine is reiterated.

In Associated Industries of New York, Inc., v. Ickes, 2 Cir., 1943, 134 F.2d 694 the principle here involved was fully discussed and analyzed. There the petitioner was a corporation organized to promote the interests of large-scale consumers of bituminous coal and sought to enjoin the enforcement of an order of the Secretary of the Interior fixing the price of such coal under the provisions of the Bituminous Coal Act of 1937. The Act, 50 Stat. p. 85, provided that "any person aggrieved by an order issued by the Commission" is authorized to seek review by petition in an appropriate United States Court of Appeals. Respondents contended that the petitioner was not a person aggrieved. The Court denied this contention, holding that the Supreme Court in the Sanders and Scripps-Howard cases, supra, had construed the "person aggrieved" review provision as a constitutionally valid statute authorizing a class of "persons aggrieved" to bring suit to prevent alleged unlawful action in order to vindicate the public interest, although no personal substantive interest of such persons had been invaded. The Court further stated that, although one threatened with financial loss through increased competition resulting from unlawful action of an official cannot, solely on that account, make the proper showing to maintain the suit against the official absent such a statute, yet the "person aggriev-

ed" statute gives the needed authority to do so to one who comes within that description. Further, the Court stated that not every person is a person aggrieved, but that one threatened with financial loss through increased competition resulting from a commission order is "aggrieved" and entitled to such a review notwithstanding that the very statute pursuant to which he obtains review is designed to keep competition alive and confers upon him no property right which gives him any kind of immunity from competition. And in further referring to the Sanders and Scripps-Howard cases, the Court stated that it had been held that a "person aggrieved," seeking review under such a statutory provision, need not show that he has such a "standing" as is ordinarily required, either in injunction suits to restrain action by officials alleged to be unlawful, or in declaratory judgment suits brought to determine the validity of such action.

This comprehensive discussion of the principle involved in the Ickes case, supra, has been considered and approved by the United States Court of Appeals for this Circuit in National Coal Association v. Federal Power Commission, 89 U.S.App.D.C. 135, 191 F.2d 462. In that case the petitioners, representing coal companies, miners, and railroad employees, respectively, alleged they would be injured by the displacement of coal by natural gas which would result from the issuance of a certificate of public convenience and necessity to the East Tennessee Natural Gas Company, to construct a gas pipe line under the Gas Act. The coal companies would lose markets, and the miners and railroad employees would lose employment previously enjoyed by them, by reason of the displacement of coal by natural gas, and petitioners were directly affected by such competition. The Court of Appeals held that petitioners were "aggrieved" within the meaning of a statute similar to the one herein involved.

To the same effect are United States v. Public Utilities Commission, supra, and American President Lines v. Federal Maritime Board, D.C., 112 F.Supp. 346, restating the same rule of law.

 It would therefore appear that plaintiff has standing to sue as a "person aggrieved," under the principle laid down by the cases referred to.

The other points raised by defendants are that there are no valid constitutional issues involved, and that the plaintiff has not made a showing of injury. The constitutional issues need not be discussed in the light of the construction herein of the statute involved, permitting review under the Jordan case, supra; and the showing of injury as set forth in the complaint and amplified by the supporting affidavits is sufficient to survive a motion to dismiss or for summary judgment.

The motion of defendants will therefore be denied. Counsel will submit appropriate order.