**BROWN TELECASTERS, INC.,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COM-
MISSION,** Appellee,

Television Broadcasters, Inc., Intervenor.

No. 15644.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 6, 1960.

Decided Feb. 16, 1961.

Petition for Rehearing En Banc Denied
June 12, 1961.

Petition for Rehearing Before the
Division Denied June 14, 1961.

Danaher, Circuit Judge, dissented.

Mr. Henry B. Weaver, Jr., Washington, D. C., with whom Messrs. Quinn O'Connell and Armistead W. Gilliam, Jr., Washington, D. C., were on the brief, for appellant.

Mr. J. Philip Smith, Counsel, Federal Communications Commission, with whom Messrs. John L. FitzGerald, General Counsel, Federal Communications Commission, Max D. Paglin, Assistant General Counsel, Federal Communications Commission, Joel Rosenbloom and Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. David S. Stevens, Washington, D. C., of the bar of the Supreme Court of New Hampshire, pro hac vice, by special leave of court, with whom Messrs. James A. McKenna, Jr., and Vernon L. Wilkinson, Washington, D. C., were on the brief, for intervenor.

Before EDGERTON, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

This case arises upon an appeal from an order of the Federal Communications Commission awarding a construction permit for a commercial VHF television station on Channel 12 in Beaumont, Texas, to Television Broadcasters, Inc., and denying the mutually exclusive application of Brown Telecasters, Inc., appellant here.

The main issue argued to us relates to the location of the studio of the successful applicant. Section 3.613(a) [1] of the Rules of the Federal Communications Commission provides, in part, "The main studio of a television broadcast station shall be located in the principal community to be served." Subsection (b) permits waiver of this requirement upon a showing of "good cause." In its original application, Television Broadcasters, the successful applicant, proposed a studio site not within the city limits of Beaumont, the principal city to be served. The Commission found that "good cause exists for waiver of the Rule, and that of threshold disqualification, is entitled to comparative consideration". After weighing the evidence before it, the Commission entered an order awarding the Television Broadcasters, despite urging permit to Television Broadcasters.

Appellant thereupon petitioned the Commission for reconsideration and re-hearing. By attached exhibits appellant sought to establish that the studio site proposed by Television Broadcasters was not available to it and that Television Broadcasters had been guilty of misrepresenting to the Commission that the site was available, knowing that in fact it was not. An affidavit attached to the opposition to appellant's petition admitted that the originally proposed site had been destroyed, and was no longer owned by Television Broadcasters. It added that it was not Television Broadcasters' intention at that time to repurchase the old site, in view of the high price being asked by the new owner. Instead, the reply stated, Television Broadcasters would apply for a modification of its construction permit to specify a new site within the city limits of Beaumont. The Commission, in its opinion reaffirming the grant, alluded to the proposed modi-

fication, indicated its reliance upon it, and stated that an application designating a new site within the city would be favorably treated.[2] Subsequently, such an application was made and granted. In the meantime, appellant had taken this appeal.

Appellant's principal contention here is that the Commission's finding that "good cause" existed to warrant waiving compliance with the "studio rule" on Televison Broadcasters' original application is unsupported and, in fact, contradicted by the record. A remand is sought, directing the Commission to make findings with respect to the allegations set forth in appellant's petition for reconsideration.

While there exists the possibility that the Commission erred in granting the waiver here at issue, it appears to us that appellant has not suffered such prejudice as would entitle it to relief. Section 10(e) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(e), requires a reviewing court to take "due account * * * of the rule of prejudicial error." [3] Brown's conduct in the proceedings below negates its present claim of prejudice. As early as November 1, 1957, Television Broadcasters petitioned for leave to amend its application to specify a different studio site within the city limits of Beaumont. Although Television Broadcasters expressly disclaimed any intent to seek a preference on the basis of the change, Brown opposed the petition. At the hearing on the proposed amendment, on December 16, 1957, counsel for Television Broadcasters stated that the change "was occasioned principally by the fact that a creditor of Television Broadcasters began proceedings to have the site which Television Broadcasters owned outside of [Beau-

---

1. 47 C.F.R. § 3.613 (1958).

2. The Commission added "In the event that future developments should prove this unwarranted, the Commission would, of course, re-evaluate the modified TB [Television Broadcasters] proposal."

3. To quote the Attorney General's Manual on the Administrative Procedure Act (1947), at p. 110: " * * * errors which have no substantial bearing on the ultimate rights of the parties will be disregarded. Market Street Ry. v. [Railroad] Comm'n, 324 U.S. 548, 561–2 [65 S.Ct. 770, 89 L.Ed. 1171] (1945)."

mont] * * * seized and sold in satisfaction of a debt. * * * And it so happened that, about October 1, about a month before the amendment was finally filed, some space became available in a building owned by Mr. Reed, and it was to that building which the studio site was changed." The request to move the studio was ultimately denied by the examiner.

Subsequently, in the course of a prehearing conference held on March 3, 1958, the Hearing Officer ruled, without objection from Brown: "There is no legal question of availability. There has been a lot of talk in prehearing and in the hearing as to the [sheriff's] sale and so on, but it would have to be ignored, because it is not evidence. So far as I am concerned, you [Television Broadcasters] still have your old site."

Oral argument upon exceptions to the initial decision of the Hearing Examiner in favor of Brown was had before the Commission on July 10, 1959. The action of the Examiner in holding improper the waiver of the "studio rule" was defended by counsel for Brown, not upon the ground that Television Broadcasters' proposed site was unavailable, but solely upon the ground that it was unsatisfactory: " * * * the only evidence in the record about this studio is that it is unsatisfactory." It was only after the Hearing Examiner had been reversed on the acceptability of the site by the Commission, that Brown first asserted its unavailability, some two years after the matter had been raised in the proceedings. Brown's continued acquiescence in the understanding that the initial studio would be treated as available is palpably inconsistent with any notion of prejudice, in view of what the record shows it must have known.

■ It is conceded that Television Broadcasters received no comparative advantage because of its original studio proposal; the Commission described it as a "comparative *deficiency* which was overcome by the over-all merit of its application." (Emphasis supplied.) Nor do we find any public injury present here, especially in view of the fact that Television Broadcasters has secured Commission approval of a new studio site within the city limits, for which a waiver of the "studio rule" is unnecessary. This court may not properly remand a case to the Commission when no public end can be served thereby. "The Communications Act of 1934 did not create new private rights. The purpose of the Act was to protect the public interest in communications. By § 402(b) (2) Congress gave the right of appeal to persons 'aggrieved or whose interests are adversely affected' by Commission action. 48 Stat. 1064, 1093. But these private litigants have standing only as representatives of the public interest. Federal Communications Commission v. Sanders Bros. Radio Station, 309 U.S. 470, 477 [642, 60 S.Ct. 693, [698] 84 L. Ed. 869, 1037]." Scripps-Howard Radio, Inc. v. Federal Communications Commission, 1942, 316 U.S. 4, 14, 62 S.Ct. 875, 882, 86 L.Ed. 1229. We find nothing in the language of the Act which would provide a different standard for appeals grounded, as this one is, upon Section 402(b) (1).[4] Accordingly, we are of the view that we may not disturb the Commission's determination of the "studio issue," since the propriety of that decision is not properly before us.

■ Appellant also attacks as arbitrary and without foundation the Commission's comparative determination in favor of Television Broadcasters. We are of the opinion that this decision has ample support in the record and must be sustained. In particular, the implications to be drawn from the conduct of Television Broadcasters' UHF operation, and the comparative experience of the applicants, are, we believe, matters peculiarly within the province of the Commission. We find no evidence of such administrative arbitrariness as would warrant judicial intrusion.

4. 47 U.S.C.A. § 402(b) (1).

A further point raised by appellant is that the Commission erred in failing to find that Television Broadcasters had been guilty of misrepresentations concerning its studio proposal. The Commission considered the evidence offered by appellant on this point and found the objection to be without merit. We agree.

Affirmed.

DANAHER, Circuit Judge (dissenting).

Certain propositions are elementary and may be simply stated. The Act authorizes a grant of a construction permit only upon a written sworn application which shall set forth such facts as the Commission may by regulation prescribe as essential to an exercise of its judgment. The Commission's Rules require that each application shall contain full and complete disclosure as to such matters. Defective applications, patently not in accordance with the Rules will be dismissed unless accompanied by a request for waiver of, or exception to, an applicable rule.

One such rule[1] provides that the "main studio of a television broadcast station shall be located in the principal community to be served," a provision which may be waived for "good cause."

Various applicants filed mutually exclusive applications for Channel 12, Beaumont-Port Arthur, Texas. All having been found "formally" qualified, a consolidated hearing was ordered, but the Commission itself as of August 8, 1957, designated as an issue as to the intervenor "whether good cause exists for a waiver of Section 3.613(a) of the Rules with respect to the main studio proposed by Television Broadcasters, Inc."

Before the Examiner, Bureau counsel pointed out the possibility of a change in the comparative picture because of the studio issue and that "it certainly is questionable whether at this late stage[2]

Television Broadcasters should be allowed to move their studio into town." The Examiner noted that the "record contains grave implications of [Television Broadcasters'] early foreknowledge of the possible unavailability (or non-use) of the studio specified in the application." The Examiner denied at that stage, February 19, 1958, the intervenor's petition to amend to specify a new studio location within the City of Beaumont. The hearing went forward, and as of August 11, 1958, the Examiner recommended an award to Brown Telecasters, Inc.

The Commission, three members absent, as of November 6, 1959 reversed the Examiner. The Commission as to the studio issue noted:

"The studio in question is already in existence and was the one used by Television Broadcasters in its UHF operation, and for which a waiver of the rule, with respect to the UHF operation, has already been granted. * * * The feasibility of the site has been demonstrated by its use as a UHF studio. If we were to require compliance with the rule as a condition to a VHF grant the sums expended by the applicant in constructing the studio pursuant to a waiver of the rule, would be largely wasted. Under the circumstances we believe good cause exists for waiver of the Rule, and that Television Broadcasters, despite urging of threshold disqualification, is entitled to comparative consideration."

Surely the Commission could not have relied upon the earlier waiver as to the UHF use of an out-of-town site in view of its having, *sua sponte*, designated the studio site issue. Once the issue was presented, we find the Commission talking about and purporting to approve the out-of-town site when the one Television Broadcasters intended to use was in

---

1. 47 C.F.R. § 3.613(a) (1958).

2. The Examiner deemed it established of record that the chief reason for Television Broadcasters' proposed studio

change was not to achieve conformance with the Rule, *supra* note 1, but because the site was unavailable.

town. Now we would be persuaded that it makes no difference, not in terms of a post-grant improvement of an applicant's position, but in terms of a post-award disregard of an initial disqualification. Yet the Examiner had been led to the position that criticisms by two other applicants became irrelevant because the Commission at the outset had found Television Broadcasters to be legally, financially and "technically qualified."[3]

The whole course of the hearing was necessarily altered. Costs involved in readying and reconstructing, as well as in program production[4] in, a new in-town site surely were critical to the financially beleaguered applicant. Competing applicants, however, had to deal with the case in the posture then presented before the Examiner. Public convenience and necessity stressed by my colleagues might be served, no matter which of the applicants might prevail, indeed Brown was recommended by the Examiner. But the due process to which Brown was entitled was ultimately denied because of what the Commission did. Clearly, to my mind and as I shall demonstrate, it was the error of the Commission which has left the record in the form which my colleagues find acceptable.

Obviously the Commission recognized that either an applicant must comply with the rule or the Commission must find that good cause exists for non-compliance. It follows that absent compliance or a proper finding of a waiver, the applicant is not qualified. The Commission's rules and regulations following the statute permit no other conclusion.

Here the grounds set forth by the Commission simply are not so. Moreover the Commission is talking in terms of waiver as to an out-of-town site when

the award actually involves a completely different location. Down to this minute, the record wholly fails to establish a studio proposal by Television Broadcasters. Comparative consideration of sites is not at all a determining factor here, we may agree, but because of the hiatus, rulings on other aspects of proof necessarily controlled the course of the hearing. Therein lay the vice, once the Examiner had denied Television Broadcasters' proffered amendment to show a changed studio site. The contestants were thus in controversy as to other comparative factors, so presenting to the Commission a very different record than should otherwise have been the case. Yet the Commission simply reaches back into the record, such as it is, then purports to find qualification where there was failure, and even in doing so is factually wide of the mark.

For example, the site specified by Television Broadcasters was not within the city. Some years earlier, it had been used by KBMT to be sure, but the intervenor's affidavit of February 4, 1958 filed with the Examiner showed that since collapse of the UHF operation, the studio site "had been so ransacked and burglarized due to lack of use, that it would have cost several thousand dollars to repair, and allowance for which had been made in our original cost estimates."

The property had already been sold at a sheriff's sale on November 5, 1957, to satisfy a judgment against Television Broadcasters. Nothing remained of the building but the concrete floor and outer walls. "Even the roof, all wiring and plumbing connections had been removed," said Television Broadcasters'

3. The Examiner additionally noted:

"It is apparent that Television Broadcasters has not met its burden of proof. To adopt the argument of Television Broadcasters would be to hold that the Commission has requested the applicant to do a futile, unnecessary thing in meeting the burden. That interpretation would be unthinkable, stultifying. The imagination does not need to run

rampant to pose many different and valid reasons as to why an applicant, possessing a waiver for the studio location in a sometime one-station market (and that, UHF) should be required to 'prove up' such a waiver in a competitive VHF situation."

4. The Examiner noted that none of the parties had "put any money figures into the record to support their views."

Mr. Reed's affidavit of December 28, 1959.

But the Commission finds "good cause" in that the non-existent studio "is already in existence"; the "feasibility of the site has been demonstrated," but the "feasibility" so found in 1952 for a UHF station related to a completely different site from that actually to be used; and if "we were to require compliance with the rule * * * the sums expended [previously] by the applicant * * * would be largely wasted"; yet they already had been.

The Commission, like any other agency, should be bound by its own rules. I think the error glares.