**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Plaintiff-Appellee,**

v.

**UNITED TRANSPORTATION UNION, Defendant-Appellant.**

**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Plaintiff-Appellant,**

v.

**UNITED TRANSPORTATION UNION, Defendant-Appellee.**

**Nos. 18109, 18145.**

United States Court of Appeals, Seventh Circuit.

March 6, 1970.

James P. Daley, Chicago, Ill., William H. Dempsey, Jr., Washington, D. C., Robert Schmiege, Chicago, Ill., David Booth Beers, Washington, D. C., Shea & Gardner, Washington, D. C., of counsel, for Chicago & N. W. Ry. Co.

John H. Haley, Jr., East St. Louis, Ill., John J. Naughton, Chicago, Ill., for United Transportation Union.

Before SWYGERT, Chief Judge, and FAIRCHILD and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This opinion contains our decision in two appeals. No. 18145 is the appeal of the Chicago and North Western Railway Company (Railway) from the district court's finding that § 2, First,[1] of the

---

1. 45 U.S.C. § 152, First, provides:
   It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and work-

Railway Labor Act (45 U.S.C. § 152, First) requiring the parties to exert "every reasonable effort" to settle their disputes was not a requirement which anticipated judicial enforcement. Consequently, since the district court found that it did not have jurisdiction to decide whether § 2, First, was complied with, and all other procedures of the Railway Labor Act having been exhausted, the district court held that the Norris-LaGuardia Act[2] prohibited the enjoining of a threatened strike by the United Transportation Union (Union). The district court, however, granted an injunction against the threatened Union strike pending an appeal of its decision of the justiciability of § 2, First, and the correctness of the court's order granting the injunction pending appeal is the subject of the second appeal, No. 18109, in which the Union is the appellant. We affirm the decision of the district court in both appeals.

The factual basis of the two appeals arose out of a dispute between the United Transportation Union and the Chicago North Western Railway Company over the question of how many brakemen should be employed on the Railway's trains. Such a dispute is commonly known as a crew consist controversy. The dispute was initiated in July of 1965 by service by the Union upon the Railway of notices pursuant to § 6 of the Railway Labor Act (Act) (45 U.S.C. § 156)[3] requesting a change in agreements to require that not less than two brakemen be employed on every freight and yard crew. In response, the Railway in December of 1965 served notices requesting an agreement that the existing rules respecting minimum crews be rescinded and the matter of crew size be committed to the judgment of management.[4]

ing conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

2. Section 4 of the Norris-LaGuardia Act (29 U.S.C. § 104) provides in relevant part:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

\* \* \* \* \*

3. Section 6 (45 U.S.C. § 156) provides:

Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such

intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

4. While the historical background of the litigation involved in crew consist controversies is not directly relevant, a brief discussion of the more recent developments in this area may be helpful for a more meaningful grasp of the problems.

The dispute over the number of brakemen to be employed began to be discussed in 1959 when most of the nation's railroads served notices upon various unions under § 6 of the Act proposing rules that would permit, in the discretion of management, the elimination of firemen and reduction in the number of

By November of 1969, the parties had held conferences pursuant to § 6 (45 U.S.C. § 156); [5] the National Mediation Board had mediated the dispute after invocation of mediation pursuant to § 5 (45 U.S.C. § 155); [6] the Board, pursuant to § 5, had concluded that its efforts had been unsuccessful and had proffered arbitration; the Railway had accepted that proffer but the Union declined; the Board thereupon, on October 16, 1969, had terminated its services pursuant to § 5. The President had not appointed an Emergency Board under § 10 (45 U.S.C. § 160),[7] and the § 5 thirty day "cooling

---

brakemen. The unions countered in 1960 by serving uniform notices proposing a national rule requiring a minimum of two brakemen on every crew.

The issues were joined and negotiated on an industry-wide basis and were not resolved until in the face of a threatened nationwide strike the Congress enacted a compulsory arbitration statute. (77 Stat. 132).

Under the arbitration prescribed by the Congress in 1963, Arbitration Board No. 282 established a national procedure for resolving the "crew consist" issue over the number of brakemen on train crews. The parties were directed to conduct local negotiations on each carrier, and, in the event of failure of agreement, to conduct local arbitration, all pursuant to national guidelines respecting questions of work burden and safety.

The arbitration award expired in January of 1966. The United Transportation Union served notices upon more than eighty railroads pursuant to § 6, proposing restoration of the crew of one conductor and two brakemen. The railroads responded with a request for an agreement permitting crew reductions beyond those authorized under the award of Arbitration Board No. 282.

5. See footnote 3, *supra.*

6. Section 5 First and Second (45 U.S.C. § 155 First and Second) provide:

First. The parties, or either party, to a dispute between an employee or group of employees and a carrier may invoke the services of the Mediation Board in any of the following cases:

(a) A dispute concerning changes in rates of pay, rules, or working conditions not adjusted by the parties in conference.

(b) Any other dispute not referable to the National Railroad Adjustment Board and not adjusted in conference between the parties or where conferences are refused.

The Mediation Board may proffer its services in case any labor emergency is found by it to exist at any time.

In either event the said Board shall promptly put itself in communication with the parties to such controversy, and shall use its best efforts, by mediation, to bring them to agreement. If such efforts to bring about an amicable settlement through mediation shall be unsuccessful, the said Board shall at once endeavor as its final required action (except as provided in paragraph third of this section and in section 160 of this title) to induce the parties to submit their controversy to arbitration, in accordance with the provisions of this chapter.

If arbitration at the request of the Board shall be refused by one or both parties, the Board shall at once notify both parties in writing that its mediatory efforts have failed and for thirty days thereafter, unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under section 160 of this title, no change shall be made in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose.

Second. In any case in which a controversy arises over the meaning or the application of any agreement reached through mediation under the provisions of this chapter, either party to the said agreement, or both, may apply to the Mediation Board for an interpretation of the meaning or application of such agreement. The said Board shall upon receipt of such request notify the parties to the controversy, and after a hearing of both sides give its interpretation within thirty days.

7. 45 U.S.C. § 160 provides:

If a dispute between a carrier and its employees be not adjusted under the foregoing provisions of this chapter and should, in the judgment of the Mediation Board, threaten substantially to interrupt interstate commerce to a degree such as to deprive any section of the country of essential transportation service, the Mediation Board shall notify the President, who may thereupon, in his discretion, create a board to investigate and report respecting such dispute. Such board shall be composed of such number of persons as

off" period respecting maintenance of the status quo had expired.

At the end of November, the Railway instituted a lawsuit in the district court asking the court to declare that the procedures of the Railway Labor Act had not been exhausted and to enjoin the Union from exercising self-help in the form of strike. The Railway alleged that the Union had not discharged all its obligations under the Railway Labor Act in that it had not complied with § 2, First, which imposes upon the parties the "duty to exert every reasonable effort" to settle their disputes. At the same time the Railway filed its complaint it moved for a temporary restraining order which the court granted.

The Railway then presented evidence to show that the Union had violated § 2, First, by not bargaining in good faith. At the conclusion of the Railway's case, the court granted defendant Union's motion to dismiss the complaint and dissolved the temporary restraining order on the basis that:

§ 2, First, * * * is a matter for administrative determination and has been determined by the National Mediation Board under the provisions of Sections 5 and 6 of the Railway Labor Act, 45 U.S.C. 155, 156, is not justiciable and this Court does not have jurisdiction to consider or adjudicate disputes with respect to compliance with such subsection, particularly after the National Mediation Board has relinquished its mediatory jurisdiction of a dispute as in this case.

The district court, however, recognizing that there was case law contrary to its decision, that a strike would result in a mooting of the appeal, and that "such a strike would irreparably injure the plaintiff and the public," granted plaintiff Railway's motion for an injunction pending appeal.

Three days after the district court's decision, the Union filed an emergency motion in this court to vacate the injunction pending appeal. This court issued an order directing that the Union's motion to vacate the injunction pending appeal be taken with the Railway's appeal from the district court's denial of an injunction below. The order also directed that the appeals be expedited. (See Chicago and North Western Railway Company v. United Transportation Union, No. 18109 unpublished order, 7th Cir. Dec. 19, 1969.)

By ordering that the Union's motion to vacate the injunction pending appeal be taken with the expedited appeal from the district court's denial of a preliminary injunction, we in effect upheld the granting of the injunction pending appeal. Our order of December 19, 1969, in that respect is inconsistent with this court's decision in Elgin J. & E. Ry. Co. v. Brotherhood of Railroad Trainmen, 302 F.2d 545 (7th Cir. 1962), which held that if the Norris-LaGuardia Act prohibits the granting of an injunction below it also prohibits the granting of an injunction pending appeal. We are no longer of the opinion that the *Elgin* case is the correct interpretation of the Norris-LaGuardia Act as it applies to in-

to the President may seem desirable: *Provided, however,* That no member appointed shall be pecuniarily or otherwise interested in any organization of employees or any carrier. The compensation of the members of any such board shall be fixed by the President. Such board shall be created separately in each instance and it shall investigate promptly the facts as to the dispute and make a report thereon to the President within thirty days from the date of its creation.

There is authorized to be appropriated such sums as may be necessary for the expenses of such board, including the compensation and the necessary traveling expenses and expenses actually incurred for subsistence, of the members of the board. All expenditures of the board shall be allowed and paid on the presentation of itemized vouchers therefor approved by the chairman.

After the creation of such board and for thirty days after such board has made its report to the President, no change, except by agreement, shall be made by the parties to the controversy in the conditions out of which the dispute arose.

junctions pending appeal and overrule our decision in *Elgin*. While it may be argued that our decision upholding the district court's denial of a preliminary injunction because of the non-justiciability of § 2, First, (see pp. 985–989 *infra*) moots the question of whether the district court erred in granting an injunction pending appeal, the necessity of an explanation of our inconsistent action in our December 19, 1969, order maintaining the injunction pending an expedited appeal and the realization that the continued adherence to an incorrect opinion could cause irreparable harm for many years before the case comes before this court in a technically correct posture, persuades us that the question is not moot but should at this time be decided.

■ We hold that the Norris-LaGuardia Act does not prohibit the district court from granting an injunction pending appeal even though the court determines that Norris-LaGuardia prohibits an injunction below. The power of a district court to grant an injunction to maintain the status quo pending appeal was first codified by the "All Writs Act" contained in the Judiciary Act of 1789, 28 U.S.C. § 1651. In Scripps-Howard Radio, Inc. v. F. C. C., 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942), the Supreme Court in upholding this power stated:

It has always been held, therefore, that, as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.

*Id.* at 9–10, 62 S.Ct. at 881.

*See also* Hovey v. McDonald, 109 U.S. 150, 161, 3 S.Ct. 136, 27 L.Ed. 888 (1883). Absent the prohibitions of the Norris-LaGuardia Act, the law is established that even if a district court determines it lacks jurisdiction to grant an injunction pending appeal, it has the power to preserve appellate review of its determination that it lacked jurisdiction. *See* United States v. Shipp, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319 (1906); *see also* Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1002–1003 (5th Cir. 1969); Eastern Greyhound Lines v. Fusco, 310 F.2d 632, 634 (6th Cir. 1962).

In the instant case as in this court's earlier opinion in the *Elgin* case, the injunction pending appeal was issued pursuant to Rule 62(c) of the Federal Rules of Civil Procedure.[8] The Rule itself is not a jurisdictional grant but merely a codification of a district court's power to maintain the status quo pending appeal. In *Elgin*, the court relied on Rule 82 of the Federal Rules of Civil Procedure[9] which provides that the promulgation of the Federal Rules does not expand the district court's jurisdiction, and Rule 65(e)[10] which provides that the Federal Rules "do not modify any statute of the United States relating to temporary restraining orders and preliminary injunctions in actions affecting employer and employee." The *Elgin* court construed Rules 82 and 65(e) as

8. Rule 62(c) of the Federal Rules of Civil Procedure provides in relevant part:
   When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

9. Rule 82 provides in relevant part:
   These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein.

10. Rule 65(e) provides:
    These rules do not modify any statute of the United States relating to temporary restraining orders and preliminary injunctions in actions affecting employer and employee; or the provisions of Title 28, U.S.C., § 2361, relating to preliminary injunctions in actions of interpleader or in the nature of interpleader; or Title 28, U.S.C., § 2284, relating to actions required by Act of Congress to be heard and determined by a district court of three judges.

denying the power of the district court to grant an injunction pending appeal pursuant to 62(c) in cases where the Norris-LaGuardia Act prohibited the granting of an injunction in the district court. The *Elgin* court's application of the three Federal Rules of Civil Procedure is correct only if we begin with the premise that Congress by enacting the Norris-LaGuardia Act intended to limit in labor disputes the inherent power of district courts under the "All Writs Act" to grant injunctions pending appeal. If the Congress did not intend such a limitation on the district court's power, Rule 62(c) can be applied without any conflict with the dictates of Rule 82 and Rule 65(e).

There is nothing in the text of the Norris-LaGuardia Act or in the legislative history surrounding the drafting and enactment of the Act indicating a Congressional intent to remove from the district courts their long-recognized power to grant injunctions pending appeal. To remove from the district courts the power to grant injunctions pending appeal and thus the power to maintain the status quo in all cases where the district court has decided that the Norris-LaGuardia Act prohibited an injunction is to in effect make the district court the court of last resort on these matters regardless of the difficulty or novelty of the issues involved. In the absence of any specific Congressional intention to remove the power of district courts to grant injunctions pending appeal, we decline to read into the Act such a serious limitation into the judicial review process.

The United States Supreme Court in United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947) supports our decision. The question before the district court in United Mine Workers involved the applicability of the Norris-LaGuardia Act so as to bar the United States from securing an injunction against a strike by United Mine Workers. The district court granted a temporary restraining order which

the Union did not obey and the district court found the Union officers to be in contempt. The Supreme Court affirmed the judgment of contempt, finding the Norris-LaGuardia Act inapplicable. The Court went on to hold, however, that even if Norris-LaGuardia applied, the district court still had the power to preserve the status quo while it decided the underlying jurisdictional issue posed by Norris-LaGuardia:

> In these circumstances, the District Court unquestionably had the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction.

330 U.S. at 290, 67 S.Ct. at 695.

While it is true that *United Mine Workers* involved a temporary restraining order and not as the case at bar an injunction pending appeal, both cases deal with difficult questions of jurisdiction. We read the Supreme Court's holding in *United Mine Workers*, that despite the prohibitions of Norris-LaGuardia the district court has inherent injunctive power to grant a temporary restraining order to preserve the status quo while deciding difficult or novel questions determining its own jurisdiction, as support for the proposition that the district court, despite Norris-LaGuardia, also has the inherent power to grant an injunction pending a review of its determination of these jurisdictional issues.

The reasoning of Justice Frankfurter in his concurring opinion in *United Mine Workers* would seem to accept our analysis and its extension to this case. Although Justice Frankfurter was of the opinion that the Norris-LaGuardia Act prohibited permanent injunctive relief in the factual situation, he concurred in the majority's result on the basis that the Norris-LaGuardia Act did not bar interim injunctive relief necessary to preserve the status quo while the court decided the jurisdictional question and while that district court jurisdictional

determination was being reviewed by the appellate court:

> To suggest that the right to determine so complicated and novel an issue could not be brought within the cognizance of the district court, *and eventually of this Court*, is to deny the place of the judiciary in our scheme of government. 330 U.S. at 310, 67 S.Ct. at 704 [emphasis supplied].

Although this issue has not been discussed in depth by other courts of appeals, the circuits which have been faced with the problem of district court injunctions pending appeal in a labor dispute have acted consistently with our decision in this appeal. See Missouri-Kansas-Texas RR. Co. v. Brotherhood of Railroad Trainmen, 342 F.2d 298 (5th Cir. 1965); Texas and N. O. RR. Co. v. Brotherhood of Railroad Trainmen, 307 F.2d 151, 153, 163 (5th Cir. 1962); Pan-American World Airways v. United Brotherhood of Carpenters, 324 F.2d 217 (9th Cir. 1963); the district court, though denying a preliminary injunction, granted a 10-day stay to preserve the status quo pending appeal to the Court of Appeals); Norfolk & P. B. L. RR. Co. v. Brotherhood of Railroad Trainmen, 248 F.2d 34 (4th Cir. 1957; the district court ordered the temporary injunction dissolved, though by supplemental order, the execution of the court's judgment was suspended pending appeal by the carrier).

While we are cognizant of the purposes of the Norris-LaGuardia Act to remove the injunctive power of the judiciary from the field of labor disputes, we are also mindful of the necessity of judicial review to our legal system. In the absence of a specific Congressional directive, we strike the balance in favor of maintaining the status quo to allow time for a meaningful judicial review.[11][11a]

We now come to the Railroad's appeal in No. 18145 from the decision of the court below that § 2, First, of the Railway Labor Act (45 U.S.C. § 152) is non-justiciable. We are of the opinion that § 2, First, does not contemplate judicial enforcement of its "reasonable effort" requirement and, therefore, affirm the decision of the district court judge.

We construe § 2, First, as a statement of the purpose and policy of the subsequent provisions of the Act and not as a specific requirement anticipating judicial enforcement.

> Nor does § 2, Second, make justiciable what otherwise is not. * * * But § 2, Second, like § 2, First, merely states the policy which those other provisions buttress with more particularized commands. General Committee of Adjustment of Brotherhood of Locomotive Engineers, etc. v. Missouri-Kansas-Texas Railroad Company, 320 U.S. 323, 334, 64 S.Ct. 146, 88 L.Ed. 76 (1943).

To imply judicial enforcement to § 2, First, would insert a judicial inquiry into every step of the Railway Labor procedures to determine in each case if reasonable effort is being exerted; this is a role which we believe Congress did not intend the courts play in the settlement of Railway disputes.

In General Committee v. M.-K.-T. RR. Co., *supra*, the Supreme Court in deciding certain questions of representation under the Railway Labor Act were not justiciable stated:

> In short, Congress by this legislation has freely employed the traditional instruments of mediation, conciliation and arbitration. Those instruments, in addition to the available economic weapons, remain unchanged in large areas of this railway labor field. On only certain phases of this contro-

---

11. We also reject the appellant Union's contention that the district court abused its discretion in granting the injunction pending appeal. We find no such abuse. Nor do we find the form of the injunction issued pending appeal improper.

11a. Since this opinion overrules Elgin J. & E. Ry. Co. v. Brotherhood of Railroad Trainmen, 302 F.2d 545 (7th Cir. 1962), we have circulated it to the full active court. No judge has requested a hearing *en banc*.

versial subject has Congress utilized administrative or judicial machinery and involved the compulsions of the law. Congress was dealing with a subject highly charged with emotion. Its approach has not only been slow; it has been piecemeal. Congress has been highly selective in its use of legal machinery. The delicacy of these problems has made it hesitant to go too fast or too far. *The inference is strong that Congress intended to go no further in its use of the processes of adjudication and litigation than the express provisions of the Act indicate.*

*Id.* at 332–333, 64 S.Ct. at 150–151. [emphasis supplied].

Later in its opinion the Court reiterated:

[T]he conclusion is irresistible that Congress carved out of the field of conciliation, mediation and arbitration only the selective list of problems which it was ready to place in the adjudicatory channel. All else is left to those voluntary processes whose use Congress had long encouraged to protect these arteries of interstate commerce from industrial strife. The concept of mediation is the antithesis of justiciability.

*Id.* at 337, 64 S.Ct. at 152.

We believe that § 2, First, was intended to play an integral part in facilitating the other more specific procedures of the Railway Act: "The heart of the Railway Labor Act is the duty, imposed by § 2 First upon management and labor * * *." Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 377, 89 S.Ct. 1109, 1115, 22 L.Ed.2d 344 (1969). However, we find that the role of determining whether "reasonable effort" is being practiced by the parties is not a judicial one but a role which should be left to the National Mediation Board.

Under the procedures of the Act, the National Mediation Board plays the dominant role in major disputes within the framework of the Act. Section 6 of the Act provides:

[I]n every case * * * where the services of the Mediation Board have been requested by either party or said Board has proffered its services, rates of pay, rules or working conditions shall not be altered by the carrier until the controversy has been finally acted upon as required by § 5 of this Act, by the Mediation Board.

Section 5 provides in pertinent part that after the services of the Board are invoked or proffered:

[S]aid Board shall promptly put itself in communication with the parties to such controversy, and shall use its best efforts, by mediation to bring them to agreement. If such efforts to bring about an amicable settlement through mediation shall be unsuccessful, the said Board shall at once endeavor as its final required action to induce the parties to submit their controversy to arbitration, in accordance with the provisions of this Act.

If arbitration at the request by one or both parties shall be refused, the Board shall at once notify both parties in writing that its mediatory efforts have failed and for thirty days thereafter, unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under § 10 of this Act, no change shall be made in the rates of pay, rules or working conditions or established practices in effect prior to the time the dispute arose.

Thus it can be seen that the Mediation Board plays a pivotal role in the workings of the Act. It maintains the status quo, attempts to bring about a voluntary settlement between the parties, tries to induce the parties to submit to arbitration after a determination that voluntary settlement cannot be reached, and then in effect, if § 10 and the Emergency Board are not appropriate, the Mediation Board after a thirty-day period releases its hold on the status quo.

■ We believe this integral role of the Mediation Board requires it and not the judiciary to enforce compliance with

§ 2, First. The Mediation Board is certainly better qualified to determine if the parties are exercising reasonable effort in settling their dispute. If the Mediation Board is of the opinion that one of the parties is not negotiating in good faith, it may simply retain jurisdiction over the mediation process until it believes good faith is being exercised. The Act provides that while the Board retains jurisdiction the parties must maintain the status quo. The Board can refuse to certify that "its mediatory efforts have failed" and thus prevent the exercise of self-help until it is satisfied that its mediatory efforts had a chance to fail, i. e., that the parties were bargaining in good faith. Mediation cannot fail if it never had a chance to succeed.[12]

Instead of involving the federal courts, in the determination of whether a reasonable effort had been exercised, after all the procedures of the Act have been completed, it seems much more efficient and sensible to allow the Mediation Board while the Act's procedures are being carried out to determine if a reasonable effort is being exercised by the parties. To allow the Mediation Board rather than the courts to perform this function removes the courts from having to issue injunctions in labor disputes (because § 2, First, had not been complied with), thus avoiding conflict with the dictates and policy of the Norris-LaGuardia Act. In addition, a judicial enforcement of § 2, First, would also require the federal courts to remand the dispute back to a certain stage in the procedures of the Act where one party was not bargaining in good faith. We find no machinery nor guidelines in the Act which would aid the court in making this difficult determination.

We are mindful that the role of the Mediation Board is basically a non-adjudicatory one, see e. g., Detroit & Toledo Shore Line Railroad Company v. United Transportation Union, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (Dec. 9, 1969). However, we recognize that for the procedures of the Act to be effective, the Mediation Board must accept in certain instances a limited "quasi adjudicatory" posture. Certainly the authority conferred on the Board pursuant to § 2, Ninth [13] (45 U.S.C. § 152, Ninth),

12. Of course, if one party is not negotiating in good faith as a dilatory tactic to prevent the other party from eventually exercising self-help, the Board can decide to release jurisdiction of the dispute and allow the procedures of the Act to be exhausted in order to allow for self-help.

13. 45 U.S.C. § 152, Ninth, provides:
Ninth. If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter. In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier. In the conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election, or may appoint a committee of three neutral persons who after hearing shall within ten days designate the employees who may participate in the election. The Board shall have access to and have power to make copies of the books and records of the carriers to obtain and utilize such information as may be deemed necessary by it to carry out the purposes and provisions of this paragraph.

to determine the proper representatives of the employees can be considered adjudicatory or quasi adjudicatory in nature. Similarly, we interpret § 2, First, to confer on the Board pursuant to its express mediatory power, the power, whether it may be considered adjudicatory or quasi adjudicatory, to make sure the parties are exercising every reasonable effort. We do not feel this limited power under § 2, First, will significantly impair the Board's impartial job as a mediator.

We find that the expertise, proximity to the negotiation process and power to maintain the status quo of the Mediation Board make it singularly well suited to implement the Congressional intent and purpose behind the inclusion of § 2, First. While we agree that the procedures of the Act are purposely long and drawn out in order for the parties to reach agreement and prevent invocation of self-help, we are of the opinion that the tacking on of judicial review after a completion of the Act's procedures does nothing but involve courts in intricate factual questions of intent while unreasonably postponing the parties' right to self-help.

The Railway places great reliance that § 2, First, is justiciable upon the Supreme Court's decision in Virginia Ry. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). In *Virginia Ry.*, the railroad had refused to engage in collective bargaining with the Federation after the National Mediation Board, acting under § 2, Ninth, of the Railway Act, determined and certified the Federation to be the representative of the shop craft employees for collective bargaining with the railroad. The Supreme Court upheld a district court injunction which required the railroad to recognize and bargain with the Federation despite the railroad's argument that § 2, Ninth, was not justiciable. While the injunction also required the railroad to make every reasonable effort to settle disputes with the Federation thus in fact invoking the dictates of § 2, First, the opinion did not state nor imply

that whether reasonable effort is in fact complied with by either party was a question for the courts to answer. The Supreme Court did not suggest that the district court retain jurisdiction to determine if the parties were negotiating in good faith, nor did it suggest a further judicial proceeding if conferences between the railway company and the Federation failed. Thus while *Virginia Ry.* holds that § 2, Ninth, contemplates judicial enforcement of the requirement to bargain with the Board's accredited employee representative, it does not hold that judicial enforcement is available to determine whether the parties are in fact negotiating in good faith. As we read *Virginia Ry.*, it allows for judicial enforcement of the specific dictates of § 2, Ninth, and simply provides that when the carrier and the employees' representatives are negotiating they should be guided by the other provisions of the Railway Labor Act including § 2, First.

In addition, to *Virginia Ry.*, the railway also relies on a recent decision by the Fourth Circuit in Piedmont Aviation, Inc. v. Air Line Pilots Ass'n Int'l, 416 F.2d 633 (4th Cir. 1969) (petition for cert. filed, 397 U.S. 926, 90 S.Ct. 924, 25 L.Ed.2d 105, in which the court upheld a district court injunction against a threatened strike. The court in a holding opposite to our conclusions found:

> Restraining the parties from self-help, through strikes or otherwise, until they have complied with the duty to bargain in good faith vindicates the congressional purpose of providing machinery to prevent strikes without creating an irreconcilable conflict with the Norris-LaGuardia Act. *Id.* at 636.

and thus held § 2, First, to be justiciable. We cannot agree with the Fourth Circuit decision. The machinery to prevent strikes which was the Congressional purpose in enacting the Railway Labor Act is contained within the procedures of the Act and not outside it in the injunctive power of the federal courts. We believe that the provisions of the Act

and the powers of the National Mediation Board can enforce the duty to bargain in good faith without the need of judicial interference.

Affirmed.