**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, a corporation, Plaintiff,**

v.

**UNITED TRANSPORTATION UNION, a voluntary association, Defendant.**

**No. 69 C 2401.**

United States District Court, N. D. Illinois, E. D.

Aug. 13, 1971.

James P. Daley, Robert Schmiege, Chicago, Ill., William H. Dempsey, Jr., David Booth Beers, Shea & Gardner, Washington, D. C., for plaintiff.

John J. Naughton, Chicago, Ill., John H. Haley, Jr., East St. Louis, Ill., for defendant.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

PERRY, District Judge.

This cause comes on for final judgment; and the Court, having heard the evidence and considered the briefs and arguments of counsel, hereby makes its findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff Chicago and North Western Railway Company is a corporation engaged in the transportation by rail of passengers and freight in interstate commerce and a "carrier" within the meaning of Section One (1) of the Railway Labor Act (45 U.S.C. § 151).

2. The defendant United Transportation Union is a voluntary unincorporated labor organization which is the successor to the former Brotherhood of Railroad Trainmen and other labor unions, and represents under the Railway Labor Act (45 U.S.C. § 151 et seq.) certain employees of the carrier in road and yard service. The acts attributed herein to the union include acts of the former Brotherhood of Railroad Trainmen. (Complaint p. 2; Answer p. 2).

3. As a result of the Award of Arbitration Board No. 282, which board was established pursuant to Public Law 88–108 (77 Stat. 132 (1963)), the carrier was in 1965 required to operate substantially all its mainline freight crews with a minimum crew consist of one conductor and two brakemen, but was permitted to operate most of its other road and yard crews with a minimum crew consist of one conductor and one brakeman, subject to certain requirements of providing sufficient work for specified existing employees represented by the union. (PX 1; J. R. Wolfe Aff. pp. 5–11).

4. In July 1965 the union served upon the carrier under Section 6 of the Railway Labor Act (45 U.S.C. § 156) notices of proposed changes in the parties' collective bargaining agreements effective January 26, 1966 which would require a minimum crew consist of one conductor and two brakemen on all the carriers' crews in road and yard service. These crew consist notices were substantially identical to notices served by the union at various times in 1965 and 1966 upon most of the other railroads in the United States. (PX 9, 10; Tr. 89, 226–227).

5. The carrier took the position that the foregoing notices of the union were premature because they were served during the period of the Award of Arbitration Board No. 282, and for this reason the carrier declined to meet with the union in conference to discuss these notices (Tr. 230; J. R. Wolfe Aff. p. 11). Thereafter, on October 4, 1965, these notices were docketed for mediation by the National Mediation Board (J. R. Wolfe Aff. p. 12), but no mediator was assigned to the dispute until May 15, 1969 (Tr. 272; J. R. Wolfe Aff. p. 30).

6. In Brotherhood of R. R. Trainmen v. Akron & Barberton B. R. R., 128 U.S. App.D.C. 59, 385 F.2d 581, 596–598, 613–614 (1967), the Court of Appeals for the District of Columbia Circuit held that the carrier breached its duty to bargain under the Railway Labor Act by refusing to discuss the union's notices in conference in 1965.

7. On December 24, 1965 the carrier served upon the union notices under Section 6 of the Railway Labor Act which proposed that the parties adopt a rule permitting the carrier to determine the size of all its crews unilaterally. Such a rule would permit the carrier to reduce the minimum size of mainline freight crews and certain other crews from two brakemen to one and permit the carrier to maintain the minimum size of other crews at a conductor and one brakeman. The carrier's crew consist notices were substantially identical to notices served by most of the other railroads in the United States at various times in 1965

and 1966 upon the union. The carrier's notices also requested that the parties meet in conference to discuss all their notices. (PX 12; J. E. Wolfe Aff. p. 19; Tr. 90, 102, 229).

8. The parties met in conference on January 18, 1966 at which time the carrier's notices were discussed, but the union declined to discuss its notices concurrently with those of the carrier (Tr. 231, 385, 403–4; J. R. Wolfe Aff. pp. 13–14).

9. At the time of the service of its notices in December of 1965 the carrier took the position that if the parties were uable to resolve the crew consist dispute in conference, the dispute should thereafter be negotiated together with the crew consist disputes then pending between the union and most of the other railroads in the United States in what is commonly called "national handling" in the railroad industry. The union, however, has consistently refused to engage in national handling of this dispute, and instead has insisted upon negotiations with individual railroads. (PX 12; J. E. Wolfe Aff. pp. 19, 38; J. R. Wolfe Aff. pp. 13–14).

10. In the fall of 1966 the National Mediation Board terminated its mediatory services under Section 5 of the Railway Labor Act (45 U.S.C. § 155) with respect to the crew consist dispute between the union and three other railroads. These railroads then commenced an action in the United States District Court for the District of Columbia to litigate the question of whether or not the union could be required to negotiate the crew consist dispute in national handling. Atlantic C. L. R. R. v. Brotherhood of R. R. Trainmen, Civil Action No. 2908–66. In the District Court the union took the position, and its officers testified, that varying local conditions on each railroad made it necessary that the matter of crew consist be negotiated locally on each railroad, so that a local crew consist rule suitable to particular conditions on each railroad could be established (J. E. Wolfe Aff. pp. 55–61). The District Court ruled in favor of the railroads, holding that national handling of the crew consist dispute was required. 262 F.Supp. 177 (D.D.C.1967). The Court of Appeals for the District of Columbia Circuit reversed, holding that differing local conditions on each railroad made a national crew consist rule "wholly unrealistic." 127 U.S.App.D.C. 298, 383 F.2d 225, 229 (1967). The Supreme Court denied *certiorari* in January of 1968 (389 U.S. 1047, 88 S.Ct. 790, 19 L.Ed.2d 839).

11. In March of 1968 the carrier invited the union to discuss as a means of compromising the dispute an agreement that would involve the payment of additional compensation to certain employees of the carrier's crews who were represented by the union—those employees who would work upon a crew having one, rather than two, brakemen. The union refused to enter into negotiations with respect to this proposal. The union's negotiators were barred by the union's national convention from making any agreement on crew consist such as the foregoing one proposed by the carrier. (PX 13–14; J. R. Wolfe Aff. pp. 15–17; Tr. 235–6, 408).

12. The parties held conferences at which defendant's crew consist notices were discussed in March, May, June, July, and August of 1968 (J. R. Wolfe Aff. pp. 17–21; Tr. 239–48). These meetings were recessed subject to the call of the union for further meetings (Tr. 254; J. R. Wolfe Aff. p. 21). The parties agreed in October of 1968 and in January of 1969 to defer further meetings to discuss the union's notices (J. R. Wolfe Aff. p. 21).

13. The parties resumed conferences in April of 1969, and the union's notices were discussed in conferences during April and May of 1969 (Tr. 255–71; J. R. Wolfe Aff. pp. 21–31). These notices were also discussed by the parties at mediation sessions held under the auspices of the National Mediation Board in June and July of 1969 (Tr. 272–309; J. R. Wolfe Aff. pp. 32–37).

14. Throughout the foregoing conferences and mediation sessions the un-

ion at all times took the position that it would not negotiate with the carrier upon the latter's proposals for reductions in the size of mainline freight crews from two brakemen to one. The union asserted that its position was based upon the fact that the other railroads which had settled the crew consist dispute with the union had not obtained any reductions in the size of mainline freight crews. As a result of the union's position the parties did not negotiate on the subject of the carrier's proposals to reduce the size of mainline freight crews. (J. R. Wolfe Aff. pp. 23–24, 35–36, 37; Tr. 259–60, 267, 320–30).

15. "[A]t all times the defendant has taken the position that the only agreement that could be reached was and is that reached by nearly all of the railroads in the United States with defendant, which requires a restoration of approximately 95% of all of the jobs in question," that is, a minimum crew consist of one conductor and two brakemen on approximately 95% of all crews. (Finding No. 14 of the Court's Order of December 11, 1969; See also J. R. Wolfe Aff. pp. 19–36; Tr. 243–315, 345, 371–372).

16. The union did not at any time in the parties' conferences in 1968 and 1969 contend that full-fledged bargaining had been impaired by the carrier's refusal to discuss the union's notices in the summer of 1965 (Tr. 315).

17. On October 16, 1969 the National Mediation Board terminated its services in the dispute over the parties' crew consist notices, and the President has not appointed an Emergency Board to investigate the dispute over these notices (J. R. Wolfe Aff. p. 37; Tr. 312).

18. On November 19, 1969 the carrier commenced this action for declaratory and injunctive relief upon the ground that the union by its bargaining conduct had violated Section 2 First of the Railway Labor Act (45 U.S.C. § 152 First) and that consequently the union had not exhausted the required procedures of the Railway Labor Act with respect to the dispute over the parties no-

tices (Complaint pp. 4–5). A decision of this Court of December 11, 1969 dismissing the complaint for lack of jurisdiction was affirmed by the Court of Appeals for the Seventh Circuit on March 6, 1970, Chicago & North Western Ry. Co. v. United Transportation Union, 422 F.2d 979, but reversed by the Supreme Court on June 1, 1971, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187.

19. During the pendency of this action since November 19, 1969, there has been no bargaining or attempt to negotiate between the parties even though the parties have had full knowledge since June 4, 1971, that the Supreme Court had decided that pursuant to Section Two (2) First of the Railway Labor Act there must be bona fide bargaining and negotiation by the parties as a pre-requisite or condition precedent to the use of self-help in the form of a strike or lock out.

20. The Supreme Court, having in mind the over-riding public interest in a controversy between a railway and its employees, by its decision in which this cause was remanded to this Court, has now imposed upon the District Courts the duty of holding a hearing and taking evidence to determine whether there has been good faith bargaining by either or both of the parties. Once the issue of good faith bargaining has been raised, the Supreme Court has in the said decision specifically directed that the District Court hold such hearings, take evidence, and make a determination on the question of good faith bargaining, pursuant to Section Two (2) First of the Railway Labor Act, upon the charge by either party that said Section Two (2) First of the Railway Labor Act has not been faithfully carried out. The Supreme Court has implicitly empowered the District Courts to hold such a hearing if the public welfare requires it, even on the Court's own motion. The requirement for good faith bargaining is a dual obligation. A railroad cannot seek equitable relief on its own behalf without doing equity, but the Court can order equitable relief, and order that matters

**650**

remain status quo for the public welfare until there has been good faith bargaining.

21. At the present time the Court finds that neither of the parties herein has bargained in good faith, and therefore finds no difference in the lack of genuine bargaining on the part of either party. This Court simply finds that under the recent decision of the Supreme Court, where this cause was remanded to this Court, that the Supreme Court has held that the public welfare requires that this Court order the parties to proceed to negotiate and engage in conferences in a genuine effort to settle the issues herein. The Court further finds that until such time as the parties do engage in good faith bargaining pursuant to the provisions of Section Two (2) First of the Railway Labor Act this Court should grant an injunction restraining the use of self-help by either of the parties until the defendant has shown that it is bargaining in good faith and has made every reasonable effort to settle with the plaintiff.

22. The Court also finds that the plaintiff cannot refuse to engage in genuine bargaining and thereby defeat the right of the defendant to resort to self-help.

23. Unless enjoined by this Court the union will strike the carrier to compel it to accede to the union's crew consist demands. The effect of such a strike would be to bring about a virtual halt to the carrier's operations and to cause grave and irreparable harm to the carrier and to the public.

## CONCLUSIONS OF LAW

1. This action arises under Section Two (2) First of the Railway Labor Act (45 U.S.C. § 152 First), and the Court has jurisdiction of the action under 28 U.S.C. §§ 1331 and 1337.

2. Section Two (2) First of the Railway Labor Act (45 U.S.C. § 152 First) requires both the carrier and the union to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes * * * in order to avoid any interruption to commerce. * * * "

3. The union in the negotiations with the carrier over the parties' crew consist notices has violated Section 2 First of the Railway Labor Act (45 U.S.C. § 152 First) in the following respects:

(a) The union has refused to enter into negotiations with the carrier over the carrier's proposals to reduce the size of mainline freight crews;

(b) The union has refused to permit its negotiators to engage in negotiations with the carrier over the carrier's proposals to settle the crew consist dispute by providing additional compensation to certain employees working on crews of one conductor and one brakeman; and

(c) Although the union successfully argued to the federal courts of the District of Columbia that local negotiations upon local considerations were essential and made a national crew consist rule "wholly unrealistic", Brotherhood of R. R. Trainmen v. Atlantic C. L. R. R., 127 U.S.App.D.C. 298, 383 F.2d 225, 229 (1967), the union has nevertheless, by engaging in "take-it-or-leave-it" bargaining, at all times insisted that the only crew consist agreement that could be reached with this carrier is that reached by nearly all the other railroads in the United States with the union.

4. The union has not exhausted all the required major disputes procedures of the Railway Labor Act and will not be free to resort to self-help to influence the carrier to accede to the union's crew consist demands unless and until the union has negotiated with the carrier in compliance with Section 2 First of the Act.

5. Since the union's failure to engage in the negotiations required by Section 2 First of the Act occurred during the period during which the National Mediation Board was attempting to comply with its statutory obligation to bring about a peaceful settlement (45 U.S.C. § 155), there has not been as to this dis-

pute the sort of mediation contemplated by the Act.

6. Since the union's failure to engage in the negotiations required by Section 2 First of the Act continued throughout the *status quo* period prescribed by Section 5 of the Act (45 U.S.C. § 155) after the National Mediation Board surrendered its jurisdiction, there has not been as to this dispute the sort of negotiations contemplated by the Act during that *status quo* period.

7. Therefore, the union has not exhausted the required major disputes procedures of the Railway Labor Act and will not be free to resort to self-help with respect to this dispute until it has negotiated with the carrier in the fashion prescribed by Section 2 First of the Act both during mediation sessions conducted under the auspices of the National Mediation Board and for such further *status quo* periods as are provided by Sections 5 and 10 of the Act (45 U.S.C. §§ 155, 160).

8. An injunction against any strike by the union over the crew consist dispute with the carrier should issue as the only practical, effective means of enforcing the duty to exert every reasonable effort to make and maintain agreements. Such an injunction is not barred by Sections 4 or 8 of the Norris-LaGuardia Act (29 U.S.C. §§ 104, 108).

9. Such injunction should issue until further order of the Court in order to give the defendant union an opportunity to negotiate and bargain in good faith.

10. The Court has no statutory autority to remand the controversy to the Mediation Board. That would be a useless gesture, for the Mediation Board has no statutory authority to order good faith bargaining or to determine whether either or both parties have bargained in good faith pursuant to Section Two (2) First of the Railway Labor Act. Only this Court has such authority.

11. The parties are duty bound and required as a condition precedent to negotiate and bargain in good faith with each other in order to reach an agreement and a settlement of the controversy over crew consist both before and after the controversy has been submitted for mediation and to continue to do so after mediation services have been terminated. Since the Court has found that neither of the parties have done so up until this time, then neither may resort to self-help until that is done.

12. Inasmuch as the parties have not bargained and negotiated as required by the Supreme Court in its opinion in this case, this Court has the authority to and it is duty bound, because of certain irreparable damage to the public, to grant an injunction against a strike by the defendant union, even though the plaintiff does not come into the Court with clean hands.

13. The clean hands equity doctrine would apply here except for the grave and irreparable damages that the public, composed of innocent bystanders, would suffer.

14. The Court has jurisdiction and it is the Court's duty to order and direct the parties herein to negotiate and engage in collective bargaining conferences in an attempt to reach an agreement concerning the controversy in question.

15. When and if the defendant shows good faith in negotiation and bargaining, whether the plaintiff does so or not, this Court will be by law required to vacate any order of injunction and permit the defendant to resort to self-help, that is to peacefully withdraw its members from employment by the plaintiff, or in more prosaic language to strike against the plaintiff. This, however, should not be done until notice has been given to the plaintiff and to the public. It will be the duty of this Court to fix a proper period of notice to be given to the plaintiff and to the public in the event of the vacating of the Court's order granting an injunction against a strike.

## DECREE

This cause comes on upon remand from the Supreme Court of the United States and the Court having now carried out

said mandate and having this day made findings of fact and conclusions of law herein does simultaneously herewith enter its decree in the following manner.

It is, therefore, ordered, adjudged, and decreed that:

1. The defendant union, throughout its negotiations with the plaintiff carrier respecting the so-called crew consist dispute arising out of the defendant's notices of July, 1965 and the plaintiff's notices of December, 1965, did not comply with the requirements of Section Two (2) First of the Railway Labor Act (45 U.S.C. § 152 First).

2. Because of this breach by the defendant union of its obligations under Section Two (2) First of the Railway Labor Act, there has not been the type of mediation required by Section Five (5) of the Railway Labor Act (45 U.S.C. § 155) nor the type of good faith negotiations required by Section Two (2) First during the status quo period prescribed by Section Five (5) following the termination of mediation.

3. The defendant union is, therefore, not free to exercise self-help with respect to the dispute arising out of the parties notices until the procedures required by Section Two (2) First of the Railway Labor Act have been carried out.

4. Until this Court has held a hearing and has found that the procedures required by Section Two (2) First of the Railway Labor Act have been carried out, the defendant union, its divisions, locals, officers, agents, employees, members, and all persons acting in concert with them, are hereby enjoined from authorizing or engaging in any strike against or picketing of the plaintiff carrier in connection with the aforesaid crew consist dispute.

5. The parties hereto shall forthwith begin negotiating and bargaining conferences in an attempt to reach an agreement over the crew consist controversy that exists between them.

6. Hearing on whether the parties or either of them have complied with the provisions of Section Two (2) First of the Railway Labor Act is hereby set for September 24, 1971 at 2 P.M.

7. The matter of costs is reserved for later determination.