**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Plaintiff-Appellee-Cross-Appellant,**

v.

**UNITED TRANSPORTATION UNION, Defendant-Appellant-Cross-Appellee.**

**Nos. 72–1115, 72–1118.**

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1972.

Decided Aug. 1, 1972.

Rehearings and Rehearings En Banc Denied Aug. 14, 1972.

Certiorari Denied Jan. 22, 1973. See 93 S.Ct. 965, 967.

Richard M. Freeman, James P. Daley, Robert Schmiege, Chicago, Ill., Francis M. Shea, Richard T. Conway, David Booth Beers, Washington, D. C., for Chicago & North Western Railway Co.

John H. Haley, Jr. and Edward W. Stubbs, Jr., E. St. Louis, Ill., John J. Naughton, Chicago, Ill., for United Transportation Union.

Before Mr. Justice CLARK *, and CUMMINGS and PELL, Circuit Judges.

CLARK, Associate Justice.

The Chicago and North Western Railway Company (CNW) brought this suit in 1969 to enjoin a threatened strike call by the United Transportation Union (UTU) involving the work rules of employees of North Western on its railroad lines. North Western contended that UTU had not complied with its duty under Section 2 First of the Railway Labor Act (45 U.S.C. § 152 First) [1] to "exert every reasonable effort" to settle the work rules dispute between the parties as to the number of brakemen to be employed on CNW's trains. The court issued a temporary restraining order, but subsequently dismissed the suit on the ground that the UTU's duty under Section 2 First was not justiciably enforceable. This court affirmed, 422 F.2d 979 (1970). The Supreme Court, however, held that CNW's claims of violation were justiciable, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971), and directed that the District Court consider and decide them on their merits. After a hearing the District Court found (August 13, 1971) that the UTU had not —nor had CNW—bargained in compliance with Section 2 First during the various stages of the dispute and that, therefore, self-help in the form of a strike could not be indulged without exhausting "every reasonable effort" to settle the controversy, 330 F.Supp. 646 (1971), and it issued an injunction against a strike, *id.* at 652. The parties renewed their negotiations and additional hearings were held by the District Court in November, 1971. On December 22, 1971, a decree was entered holding that both parties had bargained in good faith and that the UTU was now free to resort to self-help. It further held that the court was without power to remand the dispute to the National Mediation Board (NMB) and it, therefore, dismissed the complaint for want of jurisdiction, 336 F.Supp. 1149. CNW filed its notice of appeal on January 6, 1972, and on its application the District Court entered an injunction pending appeal on January 10, 1972, enjoining a strike. The UTU noted its appeal from the latter order and moved to vacate the injunction or advance the appeal. The motion to vacate was denied, but the appeal was expedited.

1. *The Issues Involved:*

Two issues are involved in this appeal: (1) Did the District Court abuse its discretion in issuing the injunction pending the appeal? And, (2) what steps of the statutory procedure must be revisited when there has not been a good faith compliance with Section 2 First? There is a third question which our disposition obviates, *viz:* What guidelines must the District Court follow in determining whether there has been a good faith compliance with Section 2 First?

We have concluded that the District Court did not abuse its discretion in issuing the injunction and that each of the steps provided by the Act must be reinvoked where the parties have not in good faith heretofore exerted every reasonable effort to settle their dispute. Only in this manner will the taint of previous bad faith be purged.

2. *The Issuance of the Injunctive Relief Pending Appeal:*

The UTU urges that the issuance of the injunction [2] staying the calling of

---

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, is sitting by designation.

1. The sub-section provides:
"It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commence or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof."

2. The District Court found that an injunction was necessary to maintain the *status*

the strike was violative of the Norris-LaGuardia Act and an abuse of discretion. We believe that this contention is completely answered by the holding of this court in the previous appeal in this case [not disturbed by the reversal on other grounds]. See Chicago & N. W. Ry. Co. v. United Transportation Union, *supra*, 422 F.2d at 983–985. We quote only one paragraph of the opinion:

> "There is nothing in the text of the Norris-LaGuardia Act or in the legislative history surrounding the drafting and enactment of the Act indicating a Congressional intent to remove from the district court their long-recognized power to grant injunctions pending appeal. To remove from the district courts the power to grant injunctions pending appeal . . . is to in effect make the district court the court of last resort on these matters regardless of the difficulty or the novelty of the issues involved. In the absence of any specific Congressional intention . . . we decline to read into the Act such a serious limitation into the judicial review process." At 984.

In addition, this is as the District Court found "a case of first impression" in which there are no precedential guidelines to follow and that present a "thorny problem" of explosive quality. In the light of these considerations, the "balance of equities herein favors the granting of an injunction pending appeal. . . ." While the employees here are protected by a million dollar bond, neither the public nor the railroad have any protection from the irreparable injury that would flow from a strike.

As for the claim that the UTU was not afforded a hearing on the injunction is-sue, the record indicates that CNW gave notice on December 22, 1971 of its intention to seek a stay pending appeal. Some two to three weeks thereafter UTU was given opportunity to and did present its position, but to no avail.

### 3. *Further Mediation:*

■ The principal issue involved here —further mediation—is not so easily resolved. However, we start with the proposition that in adopting the Act Congress intended to and did create a "scheme of gradually escalating pressures" as Mr. Justice Brennan aptly described them in Chicago & N. W. Ry. Co. v. Transportation Union, *supra*, 402 U.S. at 597, 91 S.Ct. at 1745. And, he added: "The Act is built upon a step-by-step framework. Each step is carefully drawn to introduce slightly different pressures upon the parties to reach settlement from the preceding step. First, the parties, confer jointly. Next, the National Mediation Board may add its pressure through mediation. . . ." *Id.* In short, "Congress was content to enact a machinery which dragged on, with cooling-off periods and various status quo restrictions, while the parties were required to 'treat with' one another." At 591, 91 S.Ct., at 1742.

However, as the Court points out in the opinion at 578, 91 S.Ct. at 1736: "The strictest compliance with the formal procedures of the Act is meaningless if one party goes through the motions with 'a desire not to reach an agreement'". That is exactly what happened here when the parties previously went through each step of the procedures. The District Court has found on remand of the case that neither party acted in good faith in exerting every reasonable effort to settle their differences. Hav-

---

quo pending the determination of the appeal, because a strike would (1) moot the appeal; (2) irreparably injure CNW and the public, because it would suspend the transportation of freight and passengers resulting in the loss of hundreds of thousands of dollars in revenue each day to CNW; (3) deprive the public of transportation, including 90,000 commut-

ers daily, as well as mail, freight, etc.; (4) seriously impair government services, including both military and civilian personnel, supplies, material, etc.; (5) threaten the health and welfare of a whole section of the country because of a shortage of food, medicines, etc.; and (6) stop essential transportation services to millions of people.

ing so tainted every step of the required procedures of the Act, it is necessary that they revisit each step in a good faith effort to settle their dispute. The District Court, however, only required that the joint conference step be invoked. We submit that before self-help is permitted that the parties must also exhaust the next step, *i. e.*, the National Mediation Board. This they have not done. This latter step is the very heart of the Act, because it brings into play the mediation expertise of the Board. Still, this most influential and effective step has not in good faith ever been exerted.

In view of this failure to invoke this step, neither UTU nor CNW may under the Act resort to self-help and appropriate restraint must be continued to prevent such exercise. We do not pass upon the action of the District Court with reference to its findings of good faith efforts of the parties in their joint conferences in exerting every reasonable effort to settle their dispute. However the findings of the District Court as to the good faith of the parties in the joint conference stage are such that if they hereafter demonstrate their good faith in mediation, those findings will stand as approved. We do note that in Findings 78 and 79 the trial judge found that UTU would not agree to any proposal for reduction in the size of mainline crews; nor to accept any offer of additional compensation for employees working on crews of one conductor and one brakeman. Nor would CNW agree to the "Jacksonville formula" which most of the railroads have already embraced. In the light of the previous bad faith that the trial court found present at every step of the proceedings, such actions by the parties are suspect and in conjunction with slight evidence of future unwillingness to consider seriously any compromise may well be the basis for a bad faith finding. Such adamant positions—crystallized during the previous bad faith session of the parties—must be cast aside before good faith negotiation and conciliation will succeed. The trial court must appraise them with exceeding care and make certain that the parties are in "the strictest compliance" with the Act. If what the UTU indicated as to the financial condition of CNW is true, the union may be riding a good horse to death with featherbedding. On the other hand, if the additional brakemen are necessary to the safe and efficient operation of the railroad, they should be put on as they have been by other roads.

Reversed and remanded.