**RAM BROADCASTING OF TEXAS, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Page A. Fone Corporation et al., Intervenors.**

**No. 73–2010.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 1974.

Decided Dec. 30, 1974.

James A. Koerner, Washington, D. C., with whom Arthur Stambler, Wash-

ington, D. C., was on the brief, for appellant.

C. Grey Pash, Jr., Counsel, F. C. C., with whom Ashton R. Hardy, Gen. Counsel, Joseph A. Marino, Associate Gen. Counsel and R. Michael Senkowski, Counsel, F. C. C., were on the brief, for appellee. John W. Pettit, Gen. Counsel, F. C. C. at the time the record was filed, John E. Ingle and Daniel M. Armstrong, Counsel, F. C. C., also entered appearances for appellee.

Louis Schwartz, Robert A. Woods and Lawrence M. Miller, Washington, D. C., were on the brief for intervenor Morrison Radio Relay Corp.

Jeremiah Courtney and Arthur Blooston, Washington, D. C., entered appearances for intervenors Page A Fone Corp. and FWS Radio, Inc.

Before J. EDWARD LUMBARD,* Senior Circuit Judge for the Second Circuit, and McGOWAN and TAMM, Circuit Judges.

PER CURIAM:

Petitioner RAM Broadcasting of Texas, Inc. (RAM) challenges the grant by the Federal Communications Commission of permits for construction and operation of "guard band" radio paging services in the Dallas-Ft. Worth area to FWS Radio, Inc. (FWS), Page A Fone Corp. (Page), and Morrison Radio Relay Corp. (Morrison). 40 FCC 2d 680, reconsideration denied, 42 FCC 2d 558 (1973). The permits awarded the frequency of 152.24 MHz to FWS and that of 158.70 MHz to Page and Morrison (under a sharing agreement).

RAM is an applicant for two "low band" paging frequencies, 43.22 and 43.58 MHz. Other applicants for those frequencies include Answering Unlimited, Inc. (43.22 MHz); Morrison (43.22 MHz); Airsignal Int'l, Inc. (43.58 MHz); and Forester Radio Telephone, Inc. (Forester) (43.58 MHz). FWS, one of the guard band permittees, is a corporation with 50% of the stock owned by George A. Smith, Jr., who controls Central Radio

Dispatch (a previously licensed paging service in the area), and 50% of the stock owned by Pearl and Gene Forester, who also own 48% of the stock of Forester.

Following RAM's application for the two low band frequencies in May 1971, Central and Page filed petitions to deny on the grounds that grant of the applications would result in wasteful duplication of radio paging facilities in the Dallas-Ft. Worth area. These petitions were withdrawn on June 6, 1973, approximately five weeks after the grant of guard band frequencies to FWS, Morrison, and Page.

■ In support of its petition for review, RAM alleges three errors. First, RAM asserts that there exists a Commission policy of not taking action on an application if the applicant has pending a petition to deny another application for the same service in the same market. The Commission admits the existence of this policy, and recognizes that, in the cases of Page and FWS (related through its principal to Central), this policy was not followed. See 42 FCC 2d 558, 560. The Commission argues, however, that since the RAM applications were mutually exclusive with still other applications, such that a comparative hearing was required in any event, none of the delay that RAM experienced up until June 6, 1973, when the petitions to deny were withdrawn, is attributable to those petitions.[1] We fail to find any demonstration of prejudice by RAM beyond various bald statements that the petitions to deny caused delay. But on this record it is plain that the delay would have ensued in any event and is not solely attributable to the petitions in question; and we therefore agree with the Commission that its actions in this regard, although a departure from policy, did not create such prejudice as would warrant reversal. See Brown Telecasters, Inc. v. F.C.C., 110 U.S.App.D.C. 127, 289 F.2d 868 (1961), cert. denied, 368 U.S. 916, 82 S.Ct. 196, 7 L.Ed.2d 131 (1961).

* Sitting by designation pursuant to Title 28 U.S.Code Section 294(d).

1. We note with some surprise that the delay continues even to the present.

The second policy that RAM alleges was violated in this case is described by RAM in its brief as follows:

- "Applications for improvements (such as, increases in power, changes of location, additional frequencies, etc.) to existing facilities will not be granted if that existing licensee has pending at the Commission another application which is mutually exclusive with one in the same service and in the same geographic area."

RAM admits this "policy" has never found expression in writing, and it cites no instances of the policy's employment by the Commission. More important, this alleged policy is directly contrary to decisions of the Commission, *see* Morrison Radio Relay Corp., 31 FCC 2d 612 (1971); Radio Relay Corp., 22 FCC 2d 504 (1970).

■ The Commission suggests that what RAM may have in mind is the so-called "headstart" doctrine. This doctrine was used solely in the allocation of guard band frequencies, and provided that no guard band channels would be granted until the Commission could dispose of all other guard band applications in the area. This approach was rejected in the instant proceeding, however, as unduly burdening the public, especially where (as is the case here) the competitor is already providing paging services on two-way channels. 40 FCC 2d 680 (1973). *See also* Radio Relay Corp. v. F.C.C., 409 F.2d 322, 328 (2d Cir. 1969). We believe that the Commission's reasons for this rejection fell within the area of the Commission's regulatory discretion and have support in the record. We therefore do not need to reach the question of whether the policy should apply in the situation where, as here, the competing applications are not both for guard band frequencies.

■ Finally, RAM suggests that the petitions to deny and the mutually exclusive applications filed by FWS, Morrison, and Page are evidence of "anti-competitive" conduct requiring consideration by the Commission and perhaps disapproval of the permits that were granted to FWS, Morrison, and Page. It is far from clear that this issue was raised before the Commission, although RAM insists that it was in its petition for reconsideration. In any event, the Commission's response to the petition for reconsideration shows that it did consider the problems now voiced by RAM and rationally determined that the public benefits from the grant of these permits were not outweighed by any improper competitive actions of the permittees or any competitive advantage resulting from the grant of the permits. As the Commission stated:

It is well known that the DPLMRS is a competitive service and that licensees resent seeing competitors gain any advantage. This may be understandable, but it has led to a backlog of Petitions to Deny, complaints, protests, Petitions for Reconsideration, etc., to the point that too many applications are delayed interminably. This has become a serious concern to the Commission and rule making is being considered in an attempt to accelerate our processes. However, we do not intend to hold action on all pending applications until we can conduct a rule making proceeding. Frequencies have been allocated to the DPLMRS only because we have found that their use will be in the public interest, and we do not think that we should delay applications to operate on those frequencies any longer than we have to, or that we should reconsider grants unless very strong reasons are shown. In the present case, we cannot see any valid public interest reason for reconsidering our action. We realize that the permittees will get something of a "headstart" on RAM in paging, just as RAM, on its two-way channels, has a "headstart" on those who, in the future, may obtain two-way channels, in Dallas. We do not see that as any reason to halt all improvements in public service until everyone is equal. The Commission's role is not that of a starter in a race, whose chief duty is to see that all begin together, but to foster an adequate public service.

42 FCC 2d at 461.

In summary, we believe that the Commission is correct in its assertion that (1) the grant of the permits in question while petitions to deny were pending was harmless error, (2) the headstart doctrine (to the extent it retains any vitality) is not appropriate to this case, and (3) there are no "anti-competitive" considerations sufficient to outweigh the public interest in the grant of these permits.

Affirmed.